This is an appeal from a summary judgment for the defendant, South Central Bell ("SCB"), in an action arising from the termination of Roy Bell's employment with SCB. The question presented is whether manuals prepared by SCB created an employment contract between Roy and SCB.
SCB hired Roy, a recovering alcoholic, to implement and supervise a program known as the "employee assistance program," which was designed to assist SCB employees who had drinking problems. During the course of his employment with SCB, Roy had access to two publications that, he contends, created a contract of employment under which "problem drinkers" could be fired only under conditions specified therein. The first, entitled "Employees with Drinking Problems, a Management Guide," was distributed to SCB supervisors; it explained SCB's policy toward alcoholism, gave supervisors advice on how to recognize alcoholic employees, and gave guidelines on counseling and disciplining those employees. The second, entitled "Executive Instruction Number 12, Section 6," restated that policy.
In February 1985, while on a business trip, Roy consumed alcohol. After returning to Alabama, Roy admitted to his superiors that he had had a relapse and he was suspended without pay for one week. In addition, a pay raise that had been scheduled for Roy was decreased and delayed. After that suspension, Roy returned to work.
In June 1986, Roy's daughter informed his superiors that he had suffered a second relapse. Roy's superiors discussed that relapse with him and recommended that he seek treatment. They informed Roy that undergoing treatment would have no effect on his job and that the treatment would be paid for by SCB, pursuant to the employee assistance program. Roy checked into a treatment center in Louisville, Kentucky, to undergo treatment. SCB paid for that treatment and continued to pay Roy's salary during his absence.
When Roy returned to work from the treatment center, he was confronted by his superiors and was informed that he could either resign and receive a termination allowance, or be terminated. Roy resigned and then filed an action against SCB, alleging that "Executive Instruction Number 12, Section 6," and "Employees with Drinking Problems, A Management Guide," created an employment contract between him and SCB guaranteeing that he would not be terminated unless SCB followed the procedure set out in those publications for disciplining employees with drinking problems. He contended that his constructive termination breached that contract.
SCB filed a motion for summary judgment, alleging that the documents relied on by Roy were not a "handbook" or, alternatively, if they were a "handbook," that the *Page 48 
language contained therein was not definite enough to constitute an offer. The trial court entered a summary judgment for SCB, holding that the documents did not constitute an employment contract. Roy appeals from that judgment.
The rule is settled that a contract of employment at will may be terminated by either party with or without cause or justification. See, e.g., Meeks v. Opp Cotton Mills, Inc.,459 So.2d 814 (Ala. 1984); Hinrichs v. Tranquilaire Hospital,352 So.2d 1130 (Ala. 1977).
However, this Court has held that an employment-at-will relationship can be modified by provisions in an employee handbook by which the employer promises not to discharge employees except by procedures or for causes set forth in the handbook:
 "[T]he language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 735 (Ala. 1987).
To satisfy the first requirement in the Hoffman-La Roche
analysis, "the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy." Hoffman-La Roche, 512 So.2d at 734. Whether the language in the handbook was intended to be an offer is determined by reference to the reasonable meaning of the parties' external and objective manifestations, rather than by their uncommunicated beliefs. Mayo v. Andress,373 So.2d 620, 623-24 (Ala. 1979).
An examination of some of the language contained in the Management Guide reveals that it was a general statement of SCB's policy toward alcoholism:
 "1. Alcoholism is recognized as a treatable condition with the possibility of attaining complete recovery.
 "2. Every effort should be directed toward rehabilitation of the employee as an essential part of personnel administration.
 "3. If the employee does not cooperate and rehabilitation efforts are unsuccessful, the services of the individual will be terminated through resignation, dismissal or service pension."
(Emphasis added.) The language in the Management Guide indicates that although SCB would make every effort to rehabilitate alcoholic employees, it retained complete discretion regarding the manner in which those employees would be terminated if rehabilitation efforts did not succeed. In fact, one portion of the Management Guide contained the following language:
 "Disciplinary measures are discretionary with the line organization but if the employee's behavior does not improve within a reasonable period of time, you should proceed immediately by:
 "1. Reviewing the case with higher management and agreeing on course of action to be taken.
 "2. Consulting with the State Secretary and getting advice for arranging for an interview and physical examination by a Company doctor or a Medical Consultant selected for handling these cases."
(Emphasis added.) Because the language contained in the Management Guide and the Executive Instruction was merely a statement of policy, it could not meet the contractual requirement of an offer. Hoffman-La Roche, 512 So.2d at 731.
In addition, the reasonable meaning that must be attached to the outward manifestations of SCB is that SCB did not intend for the documents relied upon by Roy to constitute an offer that could lead to a unilateral contract. Mayo, supra. The Executive Instructions were stored at a central *Page 49 
location and were made available only to management personnel. The Management Guide was intended for use by management personnel only, and it was not generally distributed; instead, managers had to request a copy from the personnel office. In addition, no representations were made to Roy that either of those documents constituted an offer of employment by SCB. Instead, he was told to use the Management Guide as a model for the employee assistance program he was hired to administer.
Because the documents relied on by Roy did not contain language specific enough to constitute an offer, but were only a statement of policy, the threshold requirement of the analysis set out in Hoffman-La Roche, supra, for determining if a handbook creates an employment contract was not met. Therefore, SCB was entitled to a judgment as a matter of law, and its summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.