The plaintiff was fired by Wolff Broadcasting Corporation ("Wolff") solely because she was a female. The principal question presented here is whether this Court should carve out an exception to the employee-at-will doctrine and hold that plaintiff stated a cause of action for breach of an implied contract of employment and for fraud.
The basic facts are not significantly disputed. In September or October 1987, the plaintiff, Patricia Williams Howard, inquired about employment with Wolff, which operated a radio station. She was unemployed at that time. Shortly thereafter, Keith Holcombe, the manager of the station, called her and set up an interview. Wolff hired Howard as a disc jockey and advertising salesperson. Howard had had no prior experience of any kind in the radio business. Howard presented evidence that, during the process of her hiring, she noted in the lobby of the station a sign stating that Wolff would not discriminate against "females, blacks, or any others." There was no written contract of employment.
On January 26, 1988, while Howard was on the air, Keith Holcombe drove to the station and informed her that she was fired. When he fired her, Holcombe told her that she was being fired because Karen Wolff, whose husband owned Wolff, did not want any females on the air. On that same night, Howard typed a letter stating that she was fired because Karen Wolff did not want females on the air. Howard says this letter was signed by Keith Holcombe.
On October 2, 1989, Howard filed a complaint against Wolff, alleging fraud and breach of contract, and against Karen Wolff, alleging intentional interference with business relations.[1]
After discovery was conducted, Wolff moved for a summary judgment, on the ground that Howard had failed, as a matter of law, to establish that she was entitled to any relief. On September 1, 1991, after a hearing on Wolff's motion for summary judgment, the trial judge entered a judgment in favor of Wolff.[2] The court entered an order making the judgment final as to all parties on November 12, 1991. Howard appeals from Wolff's summary judgment on the claims of breach of contract and fraud.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue of material fact and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the *Page 309 
moving party by this rule have often been discussed by this Court:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601
(Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quotingSchoen v. Gulledge, 481 So.2d 1094 (Ala. 1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381
(Ala. 1986). See also Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
Because this action was not pending on June 11, 1987, Ala. Code 1975, § 12-21-12 mandates that the nonmovant meet her burden by "substantial evidence." Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test, the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." Schwarzer, Summary Judgment Under theFederal Rules: Defining Genuine Issues of Material Fact,99 F.R.D. 465, 481 (1982).
I. Breach of Contract
Howard first argues that the trial court erred in entering the summary judgment in favor of Wolff on the claim alleging breach of contract. The determinative question on that issue is whether Howard's employment contract was terminable at will.
"Employees at will can terminate their employment, or can be terminated by their employer, at any time, with or without cause or justification." Allied Supply Co. v. Brown,585 So.2d 33, 35 (Ala. 1991). "Although this doctrine has been criticized as harsh, it remains the law in Alabama." Id. If the employment is terminable at will, the employer may even act maliciously in terminating the employee. Salter v. Alfa Insurance Co.,561 So.2d 1050, 1054 (Ala. 1990).
It is undisputed that Howard was not offered lifetime employment or employment of any definite duration. However, Howard argues that her employment was not terminable at will because, she says, she comes within the exception recognized inHoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala. 1987). Under Hoffman-La Roche, an employment contract is not terminable at will if three conditions are met:
 "(1) that there was a clear and unequivocal offer of lifetime employment or employment of a definite duration;
 (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and
 (3) that the employee provided substantial consideration for the contract separate from the services to be rendered."
512 So.2d at 728 (citations omitted).
Howard contends that when she entered into her contract with Wolff, there was an implied covenant that Wolff would not discriminate against her on the basis of race, gender, religion, or national origin. Howard argues that this covenant is implied in every contract of employment that is governed *Page 310 
by the regulations of the Federal Communications Commission ("FCC"), the relevant provisions of which state:
 "Equal employment opportunities — (a) General EEO policy. Equal opportunity in employment shall be afforded by all licensees or permittees of commercially or noncommercially operated AM, FM, TV or international broadcast stations (as defined in this part) to all qualified persons, and no person shall be discriminated against in employment by such stations because of race, color, religion, national origin or sex.
 "(b) EEO program. Each broadcast station shall establish, maintain, and carry out a positive continuing program of specific practices designed to ensure opportunity in every aspect of station employment policy and practice. Under the terms of its programs, a station shall:
 "(1) Define the responsibility of each level of management to ensure a positive application and vigorous enforcement of its policy of equal opportunity, and establish a procedure to review and control managerial and supervisory performance;
 "(2) Inform its employees and recognized employee organizations of the positive equal employment opportunity policy and program and enlist their cooperation;
 "(3) Communicate its equal employment opportunity policy and program and its employment needs to sources of qualified applicants without regard to race color, religion, national origin or sex, and solicit their recruitment assistance on a continuing basis;
 "(4) Conduct a continuing program to exclude all unlawful forms of prejudice or discrimination based on race, color, religion, national origin or sex from its personnel policies and practices and working conditions; and
". . . .
 "(c)(1) Disseminate its equal opportunity program to job applicants and employees. For example, this requirement may be met by:
". . . .
 "(i) Posting notices in the station's office and other places of employment, informing employees and applicants for employment of their equal opportunity rights."
47 C.F.R. § 73.2080.
This Court has held that employment policies, especially those in writing, can "become a binding promise once it is accepted by the employee through his continuing to work when he is not required to do so." Hoffman-La Roche, 512 So.2d at 733. In Hoffman-La Roche, certain employment policies were contained in an employee handbook. The Court held that the provisions contained in the employee handbook, when combined with the employee's continuation of employment following the employee's receipt of the handbook, created a unilateral contract modifying the "at will" employment relationship. The Court stated:
 "[L]anguage contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by the issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
512 So.2d at 735.
It has long been the law in Alabama that employment is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration. "[A]bsent an agreement on a definite term, any employment is considered to be 'at-will,' and may be terminated by either party, with or without cause or justification." Clark v. America's First Credit Union,585 So.2d 1367, 1369 (Ala. 1991). Furthermore, employees in Alabama *Page 311 
bear a heavy burden of proof to establish that an employment relationship is other than "at will." The law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied. Alabama Mills, Inc. v. Smith,237 Ala. 296, 301, 186 So. 699, 704 (1939).
In view of the principle that "absent an agreement on a definite term, any employment is considered to be 'at-will,' and may be terminated by either party, with or without cause or justification," we cannot say that the provisions of47 C.F.R. § 73.2080 could become "a binding promise once [they were] accepted by [Howard] through [her] continuing to work."Hoffman-La Roche, 512 So.2d at 733. In short, we cannot hold that the provisions of this federal regulation transformed Howard's at-will employment relationship with Wolff into a permanent one.
II. Fraud
Howard next argues that the summary judgment was also improper as to her fraud claim. Howard alleged in her complaint that Wolff, through a sign posted in the station lobby, "expressly represented to Plaintiff when hiring her that she would not be discriminated against on the basis of sex." (R. 15, ¶ 7.) Howard alleged that the representation was false and was known by Wolff to be false when it was made. Id.
Howard has not produced substantial evidence to support her claim that the alleged representation by Wolff misrepresented any material existing facts. Thus, Howard's complaint simply alleges, at best, promissory fraud. That is, Howard's complaint simply alleges that Wolff's alleged representation concerning its future conduct was false.
To establish a cause of action for promissory fraud, the plaintiff must prove: (1) that the defendant made a false representation of a material fact; (2) that the false representation was relied upon by the plaintiff; (3) that the plaintiff was damaged as a proximate result of the reliance; (4) that the representation was made with a present intent todeceive; and (5) that when the representation was made the defendant intended not to perform in accordance with it.Leisure American Resorts, Inc. v. Knutilla, 547 So.2d 424, 426
(Ala. 1986). Thus, to establish a cause of action for promissory fraud, Howard must prove each element of a cause of action for fraud and also that, at the time the representation was made to Howard, Wolff had a present intent to deceive her.Valley Properties, Inc. v. Strahan, 565 So.2d 571 (Ala. 1990).
In Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990), the Court was presented with an issue of promissory fraud. In Hanners, the plaintiff, a peanut processor/seller, alleged that the defendant, a commodities dealer, had failed to pay for its peanut purchases within the time stated in their contract. The plaintiff alleged that the defendant had opened its account with the plaintiff with a present intent not to honor its contract obligation regarding time for payment and with the intent of deceiving the plaintiff. The Court stated:
 " 'The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time . . . the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud.' "
Hanners, 564 So.2d at 414 (citations omitted) (quoting HearingSystems, Inc. v. Chandler, 512 So.2d 84, 87 (Ala. 1987)).
Howard produced no substantial evidence that Wolff made the alleged representation with a present intent to deceive Howard or with any intent not to perform the obligation at the time the alleged representation was made. Howard admitted that no one at Wolff ever told her anything or made any representation about any policy concerning equal employment or discrimination. *Page 312 
Instead, Howard argues that the sign in the station lobby stating the general policy that the station was an "equal opportunity employer" constituted a false representation under the law of this State and thus embodied a present intent to deceive. However, Howard never asked anyone at Wolff about the sign or about any related policy of the station. The summary judgment was properly entered in favor of Wolff on Howard's claim of promissory fraud.
III. Public Policy
Finally, Howard argues that, even assuming that a unilateral contract did not exist and that the "at-will" doctrine applies, there should be a public policy exception to that doctrine in this case.
The employment "at-will" doctrine was first recognized in Alabama in Howard v. East Tennessee, V. G. Ry., 91 Ala. 268,8 So. 868 (1891). This doctrine provides "that an employment contract terminable at the will of either the employer of the employee may be terminated by either party at any time with or without cause." Grant v. Butler, 590 So.2d 254 (Ala. 1991). Howard argues that because the doctrine is a judicially created one, the judiciary can and should abolish or modify it.
However, this Court has so far declined to judicially create a public policy exception to the employment "at-will" doctrine.See Grant v. Butler, 590 So.2d 254 (Ala. 1991); Salter v. AlfaInsurance Co., 561 So.2d 1050 (Ala. 1990); Bosarge v. BankersLife Co., 541 So.2d 499 (Ala. 1989); and Hinrichs v.Tranquilaire Hospital, 352 So.2d 1130 (Ala. 1977). On the other hand, this Court has consistently chosen to apply the doctrine and to leave the creation of exceptions to the legislature.See, e.g., Meeks v. Opp Cotton Mills, Inc., 459 So.2d 814 (Ala. 1984) (Court refused to create an exception for employees terminated as a result of filing claims for worker's compensation benefits); and Bender Ship Repair, Inc. v.Stevens, 379 So.2d 594 (Ala. 1980) (Court refused to create an exception for employees discharged for performing jury duty). When this Court refused to create an exception in Meeks, the legislature created a limited statutory exception permitting an employee terminated solely because he or she has made a claim for worker's compensation benefits to file an action for damages. Ala. Code 1975, § 25-5-11.1. Likewise, Bender has also been effectively overruled by the legislature's adoption of a statute preventing dismissal of an employee because the employee answered a call for jury service. Ala. Code 1975, §12-16-8.1.
The Court has consistently refused to create a cause of action for wrongful discharge on "public policy" grounds, for three reasons: (1) to do so would abrogate the inherent right of contract between employer and employee; (2) to do so would be to overrule well-established employment law; and (3) "contrary to public policy" is too vague or nebulous a standard to justify creation of a new tort. Salter, 561 So.2d at 1052. (Quoting Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130,1131-32 (Ala. 1977).)
Howard urges the Court to adopt a narrow public policy exception to the employment "at-will" doctrine based on principles of non-discrimination. Indeed, many States have carved out exceptions to the employment "at-will" doctrine.See, e.g., Sterling Drug, Inc. v. Oxford, 294 Ark. 239,743 S.W.2d 380 (1988); Wheeler v. Caterpillar Tractor Co.,108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985); Parnar v.Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625 (1982); Neesv. Hocks, 272 Or. 210, 536 P.2d 512 (1975); and Geary v. UnitedStates Steel Corp., 456 Pa. 171, 319 A.2d 174 (1974). Howard, in her brief, recognizes that this Court "has so far refused to allow a public policy exception to the employment 'at will' doctrine," but she says that "it is clear that the national trend exists for the adoption of a public policy exception to the employment 'at will' doctrine in the State of Alabama." Howard cites the special concurrence in Salter v. Alfa Ins.Co., 561 So.2d 1050, 1055 (Ala. 1990), in support of her argument that the termination here strikes at the very heart of her personal right not to be discriminated against. In Hinrichsv. Tranquilaire Hospital, 352 So.2d 1130, 1131-32 (Ala. 1977), this Court was asked, but it refused, to create a public policy exception *Page 313 
and to recognize a cause of action for damages for wrongful termination in a case in which the employee was discharged because she would not falsify certain medical records. Three Justices dissented in that case, but it has not been overruled.
On the public policy issue, the Congress of the United States has elected to exempt Wolff from the provisions of law relating to discrimination in employment. While we recognize that under the provisions of 47 C.F.R. § 73.2080, Wolff is prohibited from discriminating on the basis of sex, we do not think, especially in view of the principle stated in Hinrichs, that we should judicially create a wrongful discharge action based on "public policy" grounds in this case involving a licensee of the FCC. In refusing to adopt a "public policy" exception, we should not be understood as condoning a person's discharge because of gender. We merely hold that it is the province of the legislature to create such an exception, if it should determine that employees such as Howard, who cannot come within the provisions of the Equal Employment Act, should be given the right to sue for damages.
The legislature, when it meets, may desire to create a cause of action in circumstances such as those presented here. The legislature effectively overruled Meeks v. Opp Cotton Mills andBender Ship Repair, Inc. v. Stevens when it provided in §§25-5-11.1 and 12-16-8.1, respectively, for a remedy under limited circumstances. In short, the legislature has shown its willingness and ability to respond to perceived injustices that can result by a strict application of the long-standing doctrine of employment "at-will." Thus, we again decline to modify the employee-at-will doctrine by creating a public policy exception and defer to the judgment of the legislature.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] When Wolff fired Howard, it had only seven employees; therefore, the Equal Employment Opportunity Commission did not have jurisdiction over Howard's complaint of discrimination. Likewise, Howard had no cause of action under federal law. See42 U.S.C. § 2000e (2) (1972).
[2] Howard entered into a pro tanto release and settlement agreement with the defendant Karen Wolff, on October 9, 1991, on her claim alleging interference with a business relation.