Allen S. LEDBETTER, Plaintiff,

v.

UNITED INSURANCE COMPANY OF AMERICA, Defendant.

Civ. A. No. 92–D–807–E.

United States District Court, M.D. Alabama, E.D.

Oct. 29, 1993.

Joseph L. Dean, Opelika, AL, for plaintiff.

James H. Anderson, Christopher J. Hughes, Montgomery, AL, William H. Brooks, M. Christian King, Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

Now before the court is the defendant United Insurance Company of America's motion for summary judgment, filed September 1, 1993. The plaintiff Allen S. Ledbetter responded on September 15, 1993.

### Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue and personal jurisdiction are not contested.

### Facts

Allen Ledbetter became employed by United Insurance Company of America ("United") on or near November 5, 1989. Ledbetter completed and signed an employment application on October 13, 1989, and later signed the acceptance provision of United's Sales Representative Compensation Plan 1989–200 signifying that he had read the plan and agreed to accept its terms.

As a sales representative in home solicitation sales, Ledbetter sold and collected premiums for debit insurance. While he was collecting premiums on December 4, 1991, in Macon County, Alabama, Ledbetter was allegedly robbed of the $4,366.81 worth of premiums that he had previously collected. Ledbetter was struck in the head, injured, and later, received medical treatment from East Alabama Medical Center.

Ledbetter reported the money stolen to both the police and his superiors at United, Sales Manager Harold "Red" Smith and District Manager Jesse Taylor. After reporting the amount stolen ($4,366.81) and the names of the customers whose premiums had been stolen, Ledbetter was asked by Taylor to sign an agreement which would hold Ledbetter responsible for all the money taken in the robbery. On December 13, 1991, Ledbetter refused to do so. Three days later on December 16, Taylor fired Ledbetter for refusing to sign the agreement. Ledbetter ap-

pealed the termination, but evidently no ruling was made by the regional manager as prescribed by the sales compensation plan.

During his employment by United, money had been deducted weekly from Ledbetter's paycheck to purchase a $2,000 bond as required by United in its compensation plan. United denied Ledbetter's request to remit payment to him in the amount of the bond, but instead applied the sum against the amount stolen in the robbery.

Lastly, after Ledbetter was fired, Smith allegedly made defamatory statements concerning the reasons why Ledbetter left United's employment. The alleged statements in effect indicated that Ledbetter was terminated because he had taken money from United and that Ledbetter had "faked" the robbery.

As a result of these events, Ledbetter filed an action in the Circuit Court of Lee County, Alabama, for breach of contract, wrongful termination, conversion, and defamation. The action was removed to the court pursuant to 28 U.S.C. § 1441 because diversity jurisdiction was present.

### Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential ele-

ment of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion

I. *Breach of Contract and Wrongful Termination*

The rule is well settled in Alabama that, absent an employment contract for a specified or indefinite term, an employee may be terminated for "a good reason, a wrong reason, or no reason." *Hinrichs v. Tranquilaire Hosp.,* 352 So.2d 1130, 1131 (Ala.1977). To create an employment contract other than one established that is terminable at will, the following must be established: "(1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered." *Hoffman–La Roche, Inc. v. Campbell,* 512 So.2d 725 (Ala.1987) (citations omitted).

Whether language in a handbook should be construed as a unilateral offer for an employment contract is a question of law and should properly be determined by the court. *See, e.g., Campisi v. Scoles Cadillac, Inc.,* 611 So.2d 296, 298 (Ala.1992); *Bailey v. Intergraph Corp.,* 537 So.2d 21 (Ala.1988).

In the present case, Ledbetter signed an employment application which contained the following statement:

> My employment and compensation can be terminated with or without cause and with or without notice at any time at the option

of either the company or myself. I understand that no manager or representative of United Insurance Company of America has the authority to enter into any agreement for employment for any specific period of time or to make any agreement contrary to the foregoing.

Later, Ledbetter signed an acceptance of the compensation plan. Ledbetter bases his claim that he had an employment contract on the language in the compensation plan. The plan included a provision which laid out the procedures that should be followed when terminating an employee and the review process applicable should an employee want to appeal a termination decision. The termination clause also stated that "employment with United may be terminated at any time by either you or the Company." *Sales Representatives Compensation Plan 1989–200,* at 22. Lastly, the compensation plan stated that United "has the sole right to amend, discontinue, add to or change any of the provisions of this [a]greement." *Id.* at 23.

To be a contract, the "language in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy." *Mooney v. Harco Drug, Inc.,* 611 So.2d 235, 237 (Ala.1992) (quoting *Hoffman–La Roche, Inc. v. Campbell,* 512 So.2d 725, 734 (Ala.1987)). In *Bell v. South Central Bell,* 564 So.2d 46 (Ala. 1990), the Supreme Court of Alabama held that although an employment manual could modify an employment-at-will relationship, the provisions in South Central Bell's employment manual discussing the treatment of alcoholic employees were not sufficiently definite to create a contract that South Central Bell would attempt to rehabilitate all alcoholic employees. In determining whether the language was sufficient enough to become an offer, the court held that "[w]hether the language in the handbook was intended to be an offer is determined by reference to the reasonable meaning of the parties' external and objective manifestations, rather than by their uncommunicated beliefs." *Bell,* 564 So.2d at 48 (citing *Mayo v. Andress,* 373 So.2d 620, 623–24 (Ala.1979).

In *Udcoff v. Freidman,* 614 So.2d 436 (1993), Udcoff was hired as a creative director for an advertising agency. After being fired because he did not get along with company personnel or the agency's major client, Udcoff sued his employers for breach of contract. Udcoff alleged that the letter offering him employment was a contract. The Supreme Court of Alabama reaffirmed the rule that "[w]ithout a clear and unequivocal offer of employment for a specific time or for the employee's lifetime, the contract is merely for at-will employment; such employment may be terminated at the pleasure of the employer, with or without justification." *Udcoff,* 614 So.2d at 438 (citing *Selby v. Quartrol Corp.,* 514 So.2d 1294 (Ala.1987)).

The plaintiff in *Hanson v. New Technology, Inc.,* 594 So.2d 96 (Ala.1992), was terminated for security violations discovered by NASA during their investigation of NTI. Hanson had no actual written contract, but he alleged that three employee handbooks created a contract modifying his employment at will. The handbooks stated that the manuals do not imply a contract and that NTI could terminate Hanson at any time and for any cause. In affirming the trial court's order granting summary judgment, the supreme court held as a matter of law that the language cited did not constitute a unilateral contract which modified Hanson's employee-at-will status because NTI was not bound to follow the provisions. *Hanson,* 594 So.2d at 99.

In *Stinson v. American Sterilizer Co.,* 570 So.2d 618 (Ala.1990), an employee handbook that contained procedures for periodic evaluations and annual reviews was held not to create an employment contract. The court further held that American could discharge Stinson even if they did not comply with the provisions in the handbook. *Stinson,* 570 So.2d at 620. The court supported their ruling that the language in the handbook was not specific enough to constitute an offer by noting that the handbook expressly reserved the right "to follow, to ignore, or to unilaterally add to or change the reasons for discipline and to deviate from the policies entirely." *Id.,* at 621. Because the company had reserved the right to change their policies without limitation, the court ruled that the company could not reasonably be expected to

have issued a unilateral offer for an employment contract. *Id.,* at 622.

In *Howard v. Wolff Broadcasting Corp.,* 611 So.2d 307 (Ala.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1849, 123 L.Ed.2d 473 (1993), a female disc jockey was fired because the wife of the radio station owner did not want women to be allowed to broadcast on the air. In an action for breach of contract, the Supreme Court of Alabama held that "[a]bsent a clear agreement on a definite term, any employment is considered to be 'at-will', and may be terminated by either party, with or without cause or justification." *Howard,* 611 So.2d at 310; *see White v. Chelsea Ind., Inc.,* 425 So.2d 1090, 1091 (Ala. 1983) (stating that "[i]n the present case there is no agreement specifying a definite duration of employment services or limiting defendant's legal right to terminate such employment; thus there exists an employment at will"). There is a "heavy" burden on the employee to prove that the employment relationship is anything other than one at will; "the law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied." *Howard,* 611 So.2d at 311 (citing *Alabama Mills, Inc. v. Smith,* 186 So. 699, 704 (1939)); *cf. Green v. City of Hamilton, Housing Authority,* 937 F.2d 1561, 1565 (11th Cir.1991) (holding that where the language was "not rendered ambiguous by inconsistent or contradictory provisions, and because the handbook contained no disclaimers or reservations of employer discretion to deviate from the policy provisions therein, the handbook was specific enough to give rise to contractual rights and obligations").

According to *Campisi v. Scoles Cadillac, Inc.,* 611 So.2d 296 (Ala.1992), before the language used in an employee handbook will convert an employment relationship from at-will to an employment contract, the language must be definite and not a general statement of policy. *Campisi,* 611 So.2d at 299. A general statement in a handbook creates neither a continued right to employment nor a promise that could be characterized as a promise not to dismiss without just cause or without exhausting specified procedures. *Id.* The court further held that language that is

nonexclusive and changeable in the complete discretion of the employer does not constitute an offer of continued employment. *Id.* at 300.

In the present case, no clear and unequivocal offer of employment for a specified period of time nor an indefinite period was made. *See Udcoff v. Friedman,* 614 So.2d 436 (1993). The provisions in the compensation plan concerning termination were only statements of policy, policies which were subject to be changed at any time by United, not an unilateral offer of employment. *See Mooney v. Harco Drug, Inc.,* 611 So.2d 235 (Ala. 1992). It is clear that having signed an employment application that no contract for employment was being offered nor could be offered by anyone at United that the reasonable intent of the handbook could not include the creation of an employment contract. *See Bell v. South Central Bell,* 564 So.2d 46 (Ala.1990).

Furthermore, policies concerning the termination of employees, such as the ones contained in the compensation plan, do not create employment contracts. *See, e.g., Hanson v. New Technology, Inc.,* 594 So.2d 96 (Ala. 1992); *Stinson v. American Sterilizer Co.,* 570 So.2d 618 (Ala.1990). They may be changed or ignored by an employer with impunity, particularly when the company reserves the right to do so as did United. *See Stinson,* 570 So.2d at 620. Lastly, the statements concerning termination in the compensation plan were general statements and created no continued right to employment; either party could have terminated the employment relationship at any time. Thus, they were insufficient to create an employment contract. *See Campisi v. Scoles Cadillac, Inc.,* 611 So.2d 296 (Ala.1992).

Since employment contracts are not to be lightly imposed in Alabama but only in extraordinary circumstances, *Howard v. Wolff Broadcasting Corp.,* 611 So.2d 307, 310 (Ala. 1992), the court finds that the compensation plan did not modify Ledbetter's employment-at-will situation. The plan did not offer Ledbetter employment for a specified period of time nor indefinitely. Both parties were free at all times to terminate the employment relationship. The compensation plan merely

laid out the method of compensation and in no way modified the employment relationship to one other than at will.

For the reasons given above, the court finds that Ledbetter was an employee at will and that, as a matter of law, no cause of action for breach of contract is available to the plaintiff Ledbetter. As a result, summary judgment in favor of the defendant is due to be granted.

## II. *Conversion*

■ "To constitute conversion, there must be a wrongful taking or wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property." *Green County Bd. of Educ. v. Bailey,* 586 So.2d 893, 898 (Ala.1991) (holding that plaintiffs had pled sufficiently a claim for conversion of lunchroom moneys by the defendant). Accordingly, "conversion is the wrongful exercise of dominion over property to the exclusion or in defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession." *Id.*

As a general rule, conversion does not lie for money. "An action alleging conversion of money lies only where there is an obligation to deliver the specific pieces of money in question or money that has been specifically sequestered, rather than a mere obligation to deliver a certain sum." *Johnson v. Life Ins. Co. of Ala.,* 581 So.2d 438, 443 (Ala.1991). To be identifiable, the money must be " 'earmarked' money or specific money capable of identification, e.g., money in a bag or coins or notes which have been entrusted to defendants' care." *Hunnicutt v. Higginbotham,* 35 So. 469, 470 (1903). In *Lewis v. Fowler,* 479 So.2d 725 (Ala.1985), the Supreme Court of Alabama declined to extend the tort of conversion to cover a situation where an employee was suing an employer for garnishing his wages and ruled that the garnished sum was not identifiable enough to constitute conversion. The court opined that:

Money in any form is generally regarded and treated as property, and it is well settled that an action will lie for the conversion thereof, whether there is an obligation to keep intact and deliver the specif-

ic money in question, and where such money can be identified....

The requirement that there be "earmarked money or specific money capable of identification" before there can be a conversion has been complicated as a result of the evolution of our economic system.

Now, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a bill, but with identified or segregated sources *from which money has come or types of accounts into which money has been deposited.*

*Lewis,* 479 So. at 726 (emphasis added) (citations omitted).

In *Covington v. Exxon Co.,* 551 So.2d 935 (Ala.1989), the Supreme Court of Alabama ruled that royalties commingled in one account pursuant to mineral leases were not specific enough to constitute conversion, even though individual bookkeeping accounts were kept to track what was owed to each lessor. According to the court, because the royalties were never kept separately but deposited in pooled accounts located around the nation, the funds were not specifically identified. *Covington,* 551 So.2d at 939.

It is well settled that conversion does lie for money "earmarked" or money specifically capable of identification. *United Merchants & Mfrs. v. Sanders,* 508 So.2d 689, 692 (Ala. 1987). To be described specifically enough to support a charge of conversion, the "money at issue must be 'described with such reasonable certainty that the jury may know what money is meant and the defendants protected from another action based upon the same grounds' in a conversion action." *Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith,* 732 F.2d 859, 862 (11th Cir.1984) (quoting *Russell v. The Praetorians, Inc.,* 28 So.2d 786, 789 (Ala.1947)). Put another way, money must be specifically sequestered or the source of money specifically identified to support an action for conversion; an obligation to deliver a specific sum is not enough. *Johnson v. Life Ins. Co. of Ala.,* 581 So.2d 438 (Ala.1991) (holding that insurance premiums paid were not specific enough for an

action of conversion to lie); *see Gillis v. Benefit Trust Life Ins. Co.*, 601 So.2d 951 (Ala.1992) (holding that there was a genuine issue of material fact where money withdrawn from a checking account to pay insurance premiums was identifiable to the degree necessary to support an action for conversion). In the recent case of *Gray v. Liberty Nat'l Life Ins. Co.*, 623 So.2d 1156 (Ala.1993), the Supreme Court of Alabama held that "money paid on the pre-authorized checks Liberty National drew monthly against Gray's bank account was 'identifiable' money." *Gray*, 623 So.2d at 1159.

In the present case, there is a genuine issue of material fact as to whether the amount deducted from Ledbetter's check and the cash bond were "wrongfully taken." Plaintiff Ledbetter contends that the robbery at issue was legitimate and that, as a result, none of his money used to create the bond nor the bond should have been appropriated to cover the loss of premiums incurred in the robbery. United Insurance contends, on the other hand, that they appropriated the cash bond for its rightful use, i.e., to pay for losses incurred in robberies or other incidents when the correct amount of premiums was not remitted by a debit agent. The question of whether the taking was wrongful is one of fact, and it is properly determined by a jury.

■ Moreover, whether the moneys deducted from Ledbetter's checks and the cash bond were specifically identifiable to the degree required to constitute conversion is a matter of law to be determined by the court. The court finds that based on the recent Supreme Court of Alabama decision *Gray*, along with the other cases cited above, the deductions from Ledbetter's check as well as the bond were identifiable. As a result, the question remaining for the jury is whether the deductions from Ledbetter's paychecks and the cash bond were wrongfully taken.

The court finds that there is a genuine issue of material fact as to whether the money withdrawn from Ledbetter's wages and the subsequent cash bond were wrongfully taken. Furthermore, the court finds that as a matter of law the money and the cash bond are identifiable to the degree that they support a claim for conversion. For the reasons stated above, the defendant United's motion for summary judgment as to conversion is due to be denied.

### III. *Defamation*

■ To establish a prima facie case of defamation, a plaintiff must prove the following:

1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication of the statement.

*Drill Parts and Serv. Co. v. Joy Mfg. Co.*, 619 So.2d 1280, 1289 (Ala.1993) (quoting *McCaig v. Talladega Publishing Co.*, 544 So.2d 875, 877 (Ala.1989)).

■ An action for defamation will lie only if the communication is made to a third party. *Rowe v. Isbell*, 599 So.2d 35, 36 (Ala. 1992) (holding that statements made in the presence of the plaintiff's husband were published in the absence of a showing that the husband was acting as an agent of the plaintiff wife). Furthermore, a statement made to a third party must not be privileged. In *Atkins Ford Sales v. Royster*, 560 So.2d 197 (Ala.1990), an employee sued his employer, Atkins Ford Company, for defamation arising from the employer's statements that Royster had stolen $1500. The court ruled that whether statements are privileged is a question of law for the trial judge to determine. *Atkins Ford Sales*, 560 So.2d at 200. According to the court, the test for determining whether a conditional or qualified privilege exists is as follows:

Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. The duty under which the party is privileged to make the communication need not be one having the force of legal

388

obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.

*Id.* (citing *Willis v. Demopolis Nursing Home, Inc.*, 336 So.2d 1117 (Ala.1976)).

The facts in *Nelson v. Lapeyrouse Grain Corp.*, 534 So.2d 1085 (Ala.1988), are very similar to the facts in the present case. Nelson was employed as a weigher for Lapeyrouse Grain, a grain wholesale company. His job involved weighing trucks as they entered the grain company's premises and when the trucks departed to determine the amount of grain delivered to the grain elevator. When the company's records showed a much larger amount of grain stored than was actually in the elevators, an investigation ensued. Surveillance of Nelson at work exposed Nelson's practice of allowing trucks to ride over the scales without being weighed, fabricating weight tickets, and allowing the trucks to leave without unloading. Lapeyrouse's president, George Brothers, accused Nelson of stealing the grain in the presence of one of Lapeyrouse's customers. While ruling that the allegation of larceny was slander per se because the statements accused Nelson of larceny, the court held that no conditional privilege protected the publication to the customer because there was no duty, either legal, social or moral, to legitimize Brother's comments to the customer. As a result and upon the finding of evidence to support the other elements of defamation, the court held that summary judgment was inappropriate in the case.

■ Similarly, the plaintiff Ledbetter alleges that Harold "Red" Smith, the Sales Manager, made statements to customers on Ledbetter's debit route to the effect that Ledbetter was fired for stealing money or for "faking" a robbery or to the effect that Ledbetter would not be selling insurance anymore. (Sam Reeves aff. at 12; Ruben Robinson aff. at 2). The alleged statements are clearly defamatory as they insinuate that Ledbetter had committed larceny.

■ The only issue raised on the motion for summary judgment is whether the statements were published. The defendant United alleges that there is no evidence that any defamatory statements were made. To the contrary, the plaintiff has presented two affidavits of United customers formerly on Ledbetter's debit route that support Ledbetter's contention that defamatory statements were made.

The court finds that there exists a genuine issue of material fact of whether Ledbetter was defamed. As a result, summary judgment in favor of the defendant is due to be denied.

### Conclusion

For the reasons listed above, it is CONSIDERED, ORDERED, and ADJUDGED that the defendant's motion for summary judgment be and the same is hereby GRANTED in regard to the claim for breach of contract, be and the same is hereby DENIED in regard to the claim for conversion, and be and the same is hereby DENIED in regard to the claim for defamation.