**Quinneshia C. CABBLE, et al., Plaintiffs,**

v.

**CLAIRE'S STORES, INC., Defendant.**

**Civil A. No. 95–D–501–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 22, 1996.

---

H. Lewis Gillis, Anita L. Kelly, Montgomery, AL, for plaintiffs.

John W. Clark, Jr., Judith E. Dolan, Tracy Hendrix, Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendant Claire's Stores, Inc., ("Claire's") motion for partial summary judgment filed January 16, 1996. The plaintiffs responded in opposition on January 29, 1996. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that defendant's motion is due to be granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court has noted, on the other hand, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923,

933 (11th Cir.1989). At the summary judgment stage, the court must construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (citing Fed.R.Civ.P. 56(c)).

## STATEMENT OF FACTS

Plaintiffs Quinneshia Cabble, Felicia Jiles, and Shira Daniel ("the plaintiffs") seek monetary damages for false imprisonment, negligent and wanton conduct, outrageous conduct and defamation of character. Claire's seeks summary judgment on the plaintiffs' claims for outrageous conduct and defamation of character. Because this action is before the court on defendant Claire's motion for summary judgment, the court will construe the facts in a light most favorable to the plaintiffs.

On or about November 26, 1994, the plaintiffs, all three minor children, were shopping at Claire's and decided to look at Claire's selection of mood rings. Dep. of Cabble at 11, 17; Dep. of Jiles at 12, 14; Dep. of Daniel at 13, 16–17. The mood rings were packaged and marketed on a small sheet of cardboard or plastic which is hung on a peg display in Claire's. Dep. of Cabble at 19, 20; Dep. of Daniel at 30, 31. Each of the plaintiffs tried on mood rings for about five to ten minutes. Dep. of Cabble at 19; Dep. of Jiles at 16; Dep. of Daniel at 29. After looking at the mood rings, the plaintiffs returned them to the place where they were hanging and left Claire's. Dep. of Cabble at 19, 20; Dep. of Jiles at 16–17; Dep. of Daniel at 28–30.

After leaving Claire's, the plaintiffs turned left toward a chocolate chip cookie store a few stores down from Claire's. Dep. of Daniel at 35–36. At this time, TaRhonda Wiggins ("Ms. Wiggins"), an employee of Claire's, told Jirada Clark ("Ms. Clark"), her assistant manager, about the empty ring cards on the floor. Dep. of Henderson at 53. Furthermore, she stated that she had seen the plaintiffs handling the mood rings prior to leaving the store. *Id.* Subsequently, Ms. Clark proceeded into the mall corridor and grabbed Quinneshia Cabble "by the collar," while still in the mall walking area. Dep. of Daniel at 103; Dep. of Jiles at 22. The mall was crowded and anyone in the area would have been able to witness the collaring. Dep. of Daniel at 38, 103. While collaring Ms. Cabble, Ms. Clark asked to see each plaintiff's hands and then asked each plaintiff to return to Claire's. *Id.* at 37, 41, 44. Each of the plaintiffs held out their hands while they were still outside Claire's in the mall.. *Id.* at 45. Furthermore, when asked in the mall if something was wrong, Ms. Clark told the plaintiffs to come back to the store. *Id.* at 45–46.

After the plaintiffs were escorted back into Claire's, Ms. Clark asked Ms. Wiggins in a whispered tone "if [the plaintiffs] were the ones" and Ms. Wiggins replied "yeah." *Id.* at 49–52; Dep. of Cabble at 32, 35; Dep. of Jiles at 26, 27. Ms. Clark then asked the plaintiffs if they had taken the mood rings. Dep. of Daniel at 66. Each of the plaintiffs, as well as the eight customers in Claire's, probably heard these accusations. Dep. of Cabble at 32, 34–35; Dep. of Jiles at 26, Dep. of Daniel at 49, 66.

The plaintiffs were immediately taken to the back room of the store by Ms. Clark. Dep. of Daniel at 47–48. Once in the back room, Ms. Clark asked again to see the plaintiffs' hands, and then proceeded to ask Ms. Daniel if she could "pat [her] on [her] behind" in a search. *Id.* at 54, 99–100. Ms. Clark searched her to the point that Ms. Daniel felt humiliated. *Id.* at 100. In fact, Ms. Clark proceeded to search the person of each of the plaintiffs. Dep. of Cabble at 36; Dep. of Jiles at 30; Dep. of Daniel at 55. Ms. Clark also threw Ms. Daniel's purse contents, including such items as chapstick, makeup, and a powder puff, on the floor and did not pick them up. Dep. of Daniel at 101. Finally, Ms. Clark had the plaintiffs empty

the pockets of their jeans and/or jackets. *Id.* at 55; Dep. of Jiles at 31.

Prior to this incident, the defendant had trained all its employees to follow the store's set policy regarding "How to Handle and Apprehend the Shoplifter."[1] Dep. of Judy Henderson at 62–63. According to Ms. Henderson's testimony, Claire's does not have an employee who can testify truthfully that they saw the plaintiffs take anything, that they saw the plaintiffs conceal any merchandise, or that they watched the plaintiffs continuously while they were in the store. Dep. of Henderson at 59–62, 116–17.

Claire's seeks summary judgment on plaintiffs' claims under the tort of outrage and defamation. The plaintiffs' contend that they have demonstrated a genuine issue of material fact as to both of these claims.

## A. *Tort of Outrage*

■ The court will first address plaintiffs' claim for outrageous conduct brought under the tort of outrage. The Supreme Court of Alabama has restricted the confines of this tort, allowing recovery "only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993). To establish a prima facie case of outrage, "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Id.* at 1043 (citing *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala. 1981) (adopting the tort of outrage in Alabama)). The conduct complained of must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv. Co.,* 394 So.2d at 365.

■ The initial determination as to whether a statement or action is sufficiently extreme or outrageous to support a cause of action for outrageous conduct is for the trial court to make as a matter of law. *Grimsley v. Guccione,* 703 F.Supp. 903, 907 (M.D.Ala. 1988) (Thompson, J.). In this regard, the Court in *Thomas,* after citing twenty Alabama cases where no jury question was presented on a claim for outrage, stated three limited circumstances where Alabama courts have allowed this claim to go to the jury:

(1) cases having to do with wrongful conduct in the context of family burials, *see Whitt v. Hulsey,* 519 So.2d 901 (Ala.1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), *Levite Undertakers Co. v. Griggs,* 495 So.2d 63 (Ala.1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), and *Cates v. Taylor,* 428 So.2d 637 (Ala.1983) (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage); (2) a case where insurance agents employed heavy-handed barbaric means in attempting to coerce the insured into settling an insurance claim, *National Security Fire & Cas. Co. v. Bowen,* 447 So.2d 133 (Ala.1983); and (3) a case involving egregious sexual harassment, *Busby v. Truswal Corp.,* 551 So.2d 322 (Ala.1989).

*Id.* at 1044.

■ The plaintiffs base their outrage claim on the following facts: (1) they were young girls, (2) they were humiliated and felt violated when they were searched, (3) their grades in school suffered, (4) they had to be counseled by ministers and other family members, and (5) they now feel completely uncomfortable walking past defendant's store

---

1. Specifically, all of Claire's employees were trained to abide by the following guidelines:

 a. "You must see the shoplifter take your property."

 b. "You must see the shoplifter conceal the merchandise on his person."

 c. "You must watch the shoplifter continuously and see that the merchandise was not paid for. If you did not see the shoplifter fail to pay for the merchandise in question, then you do not have personal knowledge that crime has been committed and you should not make the apprehension."

and are unable to go to the mall comfortably without the company of an adult. Although the court is sympathetic to the plaintiffs' situation and in no way wishes to condone the type of actions allegedly taken by Claire's employees, the court finds compelling the fact that in every case where Alabama courts have allowed this issue to go to the jury, the allegations have been far more egregious than those presented in this case. Given the limited nature of this cause of action, the court finds that the record simply does not disclose facts so poignant as to rise to the level of outrage. Because the court finds that the plaintiffs have failed to carry their burden of proving a claim of outrage, summary judgment as to the tort of outrage claim is due to be granted.

### B. *Defamation of Character*

 A plaintiff may establish a prima facie case of defamation by proving the following:

> 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication of the statement.

*Ledbetter v. United Ins. Co. of America,* 837 F.Supp. 381, 387 (M.D.Ala.1993), *aff'd,* 59 F.3d 1247 (11th Cir.1995) (quoting *McCaig v. Talladega Publishing Co.,* 544 So.2d 875, 877 (Ala.1989)); *see also Drill Parts and Serv. Co. v. Joy Mfg. Co.,* 619 So.2d 1280, 1289 (Ala.1993) (quoting same case). Imputations of indictable criminal offenses are slanderous per se and relieve the plaintiff of the requirement of proving actual harm to reputation or any other damage in order to recover nominal or compensatory damages. *Nelson v. Lapeyrouse Grain Corp.,* 534 So.2d 1085, 1092 (Ala.1988).

 "An action for defamation will lie only if the communication is made to a third party." *Ledbetter,* 837 F.Supp. at 387 (citing *Rowe v. Isbell,* 599 So.2d 35, 36 (Ala.1992)). In other words, publication can be shown by a plaintiff only "by proof of communication of the defamatory matter to someone other than himself." *Nelson,* 534 So.2d at 1093. However, pursuant to the *McDaniel/Burney* special publication rule, "[c]ommunications among the managerial personnel of a corporation about the company's business do not constitute a publication...." *Hanson v. New Technology, Inc.,* 594 So.2d 96, 100 (Ala. 1992); *Dixon v. Economy Co.,* 477 So.2d 353, 354 (Ala.1985). In this regard, "[a]s long as a communication to a non-managerial employee falls within the proper scope of that employee's knowledge or duties, the *McDaniel/Burney* rule applies to non-managerial employees as well as to managerial employees." *Nelson,* 534 So.2d at 1093 (alleged slanderous statements made during course of theft investigation between employee and manager were protected because they were necessary to determine the culpability of the alleged criminal). As noted above, the plaintiff has the burden of proving that the alleged defamatory statement was published or communicated to someone other than herself or himself. *K–Mart Corp. v. Pendergrass,* 494 So.2d 600, 602 (Ala.1986).

In the present case, Claire's acknowledges that the alleged statements of its employees inside the store, viewed in a light most favorable to the plaintiffs, constitute slander per se; however, Claire's does not admit that the alleged statements by Ms. Clark, Claire's assistant manager, in the mall corridor constitute slander per se. In addition, Claire's contends that there was no publication by its employees because no customers heard any of the accusations. Moreover, Claire's argues that the statements made by its employees were protected by the *McDaniel/Burney* special publication rule because they related to investigating the whereabouts of its merchandise and were necessary in determining the culpability of the plaintiffs.

In the instant case, the plaintiffs allege two separate publications of slanderous statements by Claire's employees. First, they claim that Ms. Clark published her accusations to people in the mall corridor and to each of the plaintiffs in the mall corridor when she asked to see the plaintiffs hands and then to accompany her back to the store. Second, they contend that the whispered communication between Ms. Clark and Ms.

Wiggins inside the store constituted a publication to customers at Claire's as well as the plaintiffs.

■ As to the mall corridor incident, Ms. Daniel testified in her deposition that Ms. Clark stopped the plaintiffs in the mall corridor, grabbed Ms. Cabble by the collar in the mall corridor, asked to see each plaintiff's hands, and then asked them to return to the store. Dep. of Daniel at 37, 41, & 44; Dep. of Daniel at 103; Dep. of Jiles at 22. Each plaintiff responded to the demand by holding out their hands. Dep. of Daniel at 45. The court finds these facts sufficient to withstand a motion for summary judgment on the question of whether the statements of Ms. Clark constitute slander per se because a reasonable juror could find that they impute a crime of larceny.

■ The defendants maintain that, even if the statements constitute slander per se, each of the plaintiffs could not say whether any of the mall customers heard the conversation between Ms. Clark and the plaintiffs.[2] Because the burden of proof is on the plaintiffs to produce evidence that would show that there was a publication to other people in the mall, the court finds that the plaintiffs have failed to prove that the accusations were published to anyone in the mall corridor except to each of the plaintiffs. The court further finds, however, that the question of whether there was a publication, insofar as it relates to each of the plaintiffs who were present when Ms. Clark made her allegations in the mall corridor, should be left for a jury to decide. In this regard, the court notes that Claire's has not cited any case law holding that the three plaintiffs should be treated as a single person for purposes of publication. Thus, each plaintiff heard the accusations against the other plaintiffs. Therefore, viewing all facts in a light most favorable to the plaintiffs, the plaintiffs have shown that Ms. Clark's accusations against each plaintiff were published to each of the other plaintiffs. Consequently, the court finds that each of the plaintiffs has presented evidence that there was a "communication of the defamatory matter to someone other than [her]self." *Nelson*, 534 So.2d at 1093.

■ As to the second incident inside the store where Ms. Clark and Ms. Wiggins whispered accusations to each other, the court finds that the communication falls within the *McDaniel/Burney* special publication rule. It is clear that the second incident involved a communication between an employee and an assistant manager which was related to investigating the whereabouts of its merchandise and was necessary in determining the culpability of the plaintiffs. Therefore, the court finds that the plaintiffs have failed to produce any evidence of publication as to the incident in the store and that Claire's motion for summary judgment is due to be granted as to this incident.

## CONCLUSION

Based on the foregoing, it is CONSIDERED and ORDERED that defendant

---

**2.** Specifically, Ms. Cabble testified as follows

Q. Did any of the people at the cookie store say anything to y'all while y'all were standing there?
A. No.
Q. Do you know if any of those people overheard what the Chinese lady from Claire's said to you guys?
A. They could have.
Q. Do you know if they did?
A. No.

Dep. of Cabble at 27. Furthermore, Ms. Jiles testified as follows:

Q. Do you know if anybody that was around nearby heard this going on?
A. Could have been people walking by.
Q. But you don't know for sure whether anybody heard?
A. No, I don't know. I can't say.

Q. Do you know if the people that were working in—the night of—the cookie store or any of the other little stores along there might have overheard any of this?
A. I can't say.

Dep. of Jiles at 24. Finally, Ms. Daniel testified as follows:

Q. Do you know if anyone else overheard what she said to you?
A. Maybe. I'm not sure.
Q. Just don't know? What about those people in that cookie store, do you think they heard it?
A. No.
Q. You don't think they heard it?
A. No.
Q. How about other customers that were walking up and down the mall, do you think any of those people might have heard it?
A. They might have heard it.

Dep. of Daniel at 42, 43.

Claire's motion for summary judgment as to plaintiffs' tort of outrage claim be and the same is hereby GRANTED.

It is further CONSIDERED and OR-DERED that defendant Claire's motion for summary judgment as to plaintiffs' slander claim be and the same is hereby DENIED as to the incident in the mall corridor because the plaintiffs have produced sufficient evidence showing that a publication of Ms. Clark's accusations was made to each of the plaintiffs.

It is further CONSIDERED and OR-DERED that defendant Claire's motion for summary judgment as to plaintiffs' slander claim be and the same is hereby GRANTED as to the second incident because there was no publication under the *McDaniel/Burney* special publication rule.