YATES, Judge.
The Jasper Housing Authority (“JHA”), a federally subsidized public housing authority, filed an eviction action in the district court against Doris McKeel, alleging unlawful de-tainer. The district court ordered the eviction, and McKeel appealed to the circuit court. The circuit court entered a summary judgment in favor of the JHA. McKeel appeals, arguing: (1) that the court’s allowing the JHA to amend its complaint violated her due process right; and (2) that the trial court committed reversible error in entering the summary judgment for the JHA. After a thorough review of the record, we reverse.
On November 9, 1992, the JHA notified McKeel that her lease agreement was being terminated, claiming she had violated section 5(B) of the lease agreement and the “Drug-Free Addendum” to that agreement by allowing her son, who was not listed on the lease, to live with her. In section 5(B) the tenant agrees “[n]ot to provide accommodations for boarders, lodgers, or others not listed on lease.” In that same letter, the JHA informed McKeel of her right to appeal the termination notice in accordance with JHA grievance procedures.
*316 On November 12, 1992, the JHA sent McKeel another letter, reiterating the reasons for terminating her lease and informing McKeel of her right to request a formal hearing. After an informal hearing on November 24, 1992, and a formal hearing on February 23, 1993, the district court ordered McKeel evicted; she appealed to the circuit court.
On November 5, 1993, the JHA filed a motion for summary judgment in the circuit court; McKeel responded on November 30, 1993, with a supporting affidavit denying that her son had lived with her in 1992 during the months of September, October, and November.
During the pendency of the appeal, on November 23, 1993, the JHA sent a letter to McKeel, amending the original termination notice to include allegations of additional violations. The letter stated that McKeel had violated section 5(P) of the lease agreement, which required her “to abide by all necessary regulations and policies promulgated by the Management for the benefit and well-being of the Housing Authority and Tenants.” Section 5(P) states, “Said policies and regulations are posted in the Housing Authority offices and are incorporated herein by reference.” The letter also stated that McKeel had failed “[t]o keep the premises ... safe and clean,” in violation of section 5(K) of the lease agreement, and that because McKeel’s gas service and electricity had been disconnected on September 29 and 30,1993, respectively, for nonpayment, her rental unit “ha[d] no utility services and [was] not decent, safe, and sanitary.” This determination was based, in part, on a resolution the JHA had passed in 1989 requiring that tenants maintain electric service to their apartment, “during total time of occupancy,” or face eviction.
Neither section 5(P) nor section 5(K) of McKeel’s lease agreement indicates, on its face, that failure to pay utilities will result in eviction. Moreover, the JHA presented no evidence to indicate that McKeel had ever received a copy of its 1989 resolution. Under section 4(A) of the lease agreement, which she entered on December 12, 1991, the management agreed “[t]o maintain the premises and the project in decent, safe, and sanitary condition.” This provision could be interpreted as requiring that the JHA maintain the utilities, which the JHA had done, in spite of the 1989 resolution, until the move to convert to tenant-paid utilities in 1993.
Further, the record does not indicate whether the lease change was made in accordance with Section 12 of the lease agreement, which provides: “Changes in this lease must be accomplished by a written rider to the lease executed by both parties.” The JHA presented no evidence that McKeel executed a written rider to the lease agreeing to assume responsibility for maintaining her utilities. McKeel, in her affidavit in support of her objection to the JHA’s second motion for summary judgment, stated, in pertinent part: “Failure to maintain utilities is not a violation of my lease agreement because no provision of my lease requires me to maintain a contract in force and effect for utilities.” A genuine factual dispute exists not only as to whether the lease terms adequately notified McKeel that eviction would result from failure to pay her own utilities, but also as to whether McKeel agreed to the alteration of the lease.
The JHA amended its complaint in the circuit court on January 11, 1994, to allege additional grounds in support of its unlawful detainer claim, as set out in the November 23 letter, along with the following allegation:
“Defendant’s failure to keep utilities on in the rented premises violates [paragraph] ‘IV(I)’ of Defendant’s lease which required that the tenant ... maintain a contract in force and effect during tenancy for delivery of utility services to tenant’s premises.”
The JHA then filed a second motion for summary judgment on January 26,1994, presenting evidence that it had sent a letter to all tenants on February 23, 1993, notifying them of the decision to convert the operation of its natural gas system to tenant-paid gas service. The tenants were to be provided an additional utility allowance; their rent would be adjusted in accordance with the allowance. A gas company representative was to meet with the tenants before July 1, 1993, to discuss the conversion. Nothing in the record indicates that McKeel met with the represen *317 tative. But, more importantly, paragraph IV(I) is not in the lease executed by McKeel and included in the record. McKeel, in her affidavit in support of her objection to the JHA’s second motion for summary judgment, stated: “There is no provision in my lease that requires me to maintain utilities on the rented premises, and there is no such paragraph as IV(I) in my lease.” A genuine factual question exists as to what was required by paragraph IV(I) and whether it was a part of McKeel’s lease agreement.
The JHA stated that on October 21, 1993, it had sent another letter to all tenants, warning them that their failure to pay their gas bills would result not only in the termination of their gas service but in the initiation of eviction proceedings. McKeel, in her affidavit, denied receiving the October 21 letter. She argues that she was not on notice that failure to pay her utility bills would violate a provision of the lease, and would result in her eviction. A genuine issue of material fact exists as to whether McKeel received the October 21, 1993, letter. Also, regardless of whether McKeel received the letter, the record reveals that the JHA sent it almost a month after McKeel’s utilities had been turned off; thus, the letter would not have provided McKeel adequate notice that nonpayment of utilities would violate a provision of the lease and would result in eviction.
An appellate court reviewing a summary judgment applies the same standard that the trial court applies when ruling on a summary judgment motion. McLemore v. Fleming, 632 So.2d 482, 483 (Ala.Civ.App.1993). Our Supreme Court has stated:
‘“The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact.’
“... [W]e must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant.”
Howard v. Wolff Broadcasting Corp., 611 So.2d 307, 309 (Ala.1992), cert. denied, — U.S.—, 113 S.Ct. 1849, 123 L.Ed.2d 473 (1993) (citations omitted) (quoting earlier cases).
In entering a summary judgment for the JHA, the circuit court concluded that genuine issues of material fact may exist as to whether McKeel violated her lease by allowing her son to live with her, but that no genuine issue of material fact exists as to whether McKeel failed to maintain her utilities, and thereby violated her lease agreement. While we agree with the trial court that there is no factual question concerning McKeel’s failure to pay her utilities, we must conclude that there is a genuine issue of material fact as to whether McKeel received the October 21 letter notifying her that failure to maintain her utility service would result in eviction.
Also, it is unclear from the record whether the lease sufficiently notified McKeel of the consequences of failing to maintain her utility service. We conclude, therefore, that a genuine issue of material fact exists as to whether the letter of October 21 or the lease terms adequately apprised McKeel of the consequences of failure to maintain her utility service. The summary judgment was, therefore, improper.
REVERSED AND REMANDED.
ROBERTSON, P.J., and THIGPEN, J., concur.