THOMPSON, Judge,
dissenting.
Alabama is an “employment-at-will” state. Our supreme court has carved out a limited exception to the rule of employment at will, allowing various terms communicated between the employer and the employee in an employee handbook to change the employee’s at-will status. Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987).
The evidence indicates that Cannon was a valued employee at Michelin until he suffered a head injury in February 1996 while he was ice-skating. Following the injury, his neurologist released him to return to work on at least three separate occasions, but Cannon found himself unable to successfully resume his duties, because of dizzy spells and blackouts. Michelin’s medical-leave-of-absence policy provided that an employee would be automatically terminated if he or she was unable to return to a “full-time regular job” after a year’s leave of absence for a medical problem. The policy also provided that an employee could “reset” the one-year clock by returning to his or her regular full-time job for 90 consecutive days. Cannon’s supervisors, fearing the loss of an employee of Cannon’s caliber, because he had almost exhausted his 12 months of medical leave, told him of the 90-day rule. Cannon testified in his deposition that, after telling him of the 90-day rule, Wilton Crawford, Michelin’s personnel manager, and Tommy Hilyer, a coworker, transported him to and from work and assisted him in many other ways in an effort to help him keep his job. Tragically, Cannon’s condition worsened to the point that his working in the plant posed a safety hazard to both him and his co-workers. Because he had not been able to return to his regular duties in the plant, Michelin terminated Cannon’s employment on February 15, 1997. Two weeks before the termination, Cannon’s neurologist wrote the following letter to Cannon’s family physician:
“I saw Mr. Cannon in our clinic for follow-up. I am enclosing copies of his neuropsychological evaluation results. As you will see, it was found that not only [does he have] post-concussion syndrome but also post-traumatic stress disorder as a reaction to it. I have explained to the patient that it is likely that this condition has worsened his symptoms and that he will be required to have therapy for this before he can start getting any better. I am in the process of inquiring how to get this therapy done and I will set this up for the patient as soon as I can. For the time being, I am going to put him on disabili *674 ty at least until he is re-evaluated six months after he has been on therapy. I 'will continue [the] same medications and make no other changes for this moment. Thank you for allowing us the opportunity to take care of this patient.”
It is clear from the text of the letter that Cannon was unable to work at the time of his termination, and for months thereafter. It is undisputed that Cannon was a valued employee, and I believe it is clear that he was terminated for a legitimate business reason — he was unable to safely perform his job for an extended period. This court’s attempt to manufacture an employment contract from the futile attempt made by Cannon and his coworkers to reset his one-year clock through use of the 90-day rule creates a precedent that ultimately will serve neither the worker nor the employer. The evidence simply fails to support a clear and unequivocal offer of employment.
As for Cannon’s claim, which he has styled as a claim alleging fraudulent suppression, I find that claim, in essence, to allege promissory fraud. In order to establish promissory fraud, i.e., a fraud predicated on a promise to act or to refrain from acting at some future time, the plaintiff must establish that the promisor had no intention of keeping the promise at the time it was made. Howard v. Wolff Broadcasting Corp., 611 So.2d 307, 311 (Ala.1992). In order to survive a motion for summary judgment on this claim, Cannon had to establish by substantial evidence that his supervisors intended to deceive him when they informed him of the 90-day rule. No evidence in the record supports that proposition. I, therefore, respectfully dissent.
CRAWLEY, J., concurs.