This is an appeal from a judgment denying cancellation of a mineral lease in a suit brought by the landowners, the Dixsons. We affirm.
On October 8, 1974, the Dixsons (husband and wife) entered into an agreement with C. G. Excavating, Inc., entitled "Option to Lease and Lease." This agreement allowed C. G. to strip mine coal from 100 acres of the Dixsons' land for five years, with an option to renew for five years, in exchange for $100, future royalties, and the performance of specified covenants. C. G. covenanted that it would reclaim the land, replacing top soil and planting grass or trees, and that it would complete reclamation within 90 days following the cessation of mining activity. The lease also contained a termination clause empowering the Dixsons to terminate the lease and re-enter the land in the event that C. G. remained in breach of any covenant for 60 days following written notice of default.
C. G. operated for approximately four months before ceasing to extract coal from the land. There were several open pits, filled with rain water, in which coal lay on the surface. There is evidence that some pits which did not contain coal were back-filled. The evidence is in sharp conflict regarding C. 
G.'s efforts to continue mining or reclamation. The Dixsons assert that C. G. had ceased mining operations, that the covenant to reclaim was breached, and that they did not prevent C. G. or anyone else from entering the property to mine or reclaim. C. G. counters that it has not abandoned the lease, that the covenant to reclaim has not been breached, and that Mr. Dixson threatened to shoot C. G.'s employees or representatives if they attempted to mine the coal or reclaim the land.
In a prior case Mr. Dixson had sought cancellation of this lease on sixteen grounds, including breach of the covenant to reclaim and several other covenants. Relief was denied on June 21, 1976, due to *Page 1162 
failure to give notice of breach as required by the lease.
The present suit was brought on February 8, 1977, alleging breach of the lease, including breach of the covenant to reclaim, and seeking damages and cancellation. C. G. counterclaimed for damages for breach of contract, assault, and slander of title, and for an injunction. The basis of the company's counterclaim was that Mr. Dixson had made threats of physical violence which prevented its performance under the lease.
In accordance with a pre-trial order, there was a joint trial of the legal and equitable issues. The entire testimony in the first case was entered into evidence in the second trial, and additional testimony was taken. The case was submitted to the jury on the question of damages and to the court on the questions of cancellation and injunction. After the jury found for the Dixsons and awarded them $10,000 damages, the court denied relief under the Dixsons' prayer for cancellation and held the lease to be valid and in full force and effect. It is from the judgment denying cancellation that the Dixsons appeal. We affirm.
The issue presented for review, as stated by the Dixsons in brief, is whether the lease should be cancelled for breach of a covenant to reclaim when a jury hearing identical testimony awarded damages for breach of the covenant. C. G. states the issue is whether the trial court's decree is supported by the record, since the evidence, or part of it, was heard ore tenus.
We have examined the record and find that there is evidence to support the trial court's decree. Several witnesses testified that Mr. Dixson refused them permission to enter the land to mine coal and threatened to shoot representatives of C. G. if they attempted to enter the land to mine coal.
It is well-settled that one who seeks equitable relief must come into court with "clean hands" and that the application of this doctrine is peculiarly within the discretion of the trial court. Carter v. Carter, 282 Ala. 239, 210 So.2d 800 (1968). More specifically, a party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure. Lovoy v. Ratliff, 276 Ala. 156, 159 So.2d 857
(1963); Selman v. Bryant, 261 Ala. 53, 72 So.2d 704 (1954). Further, a court in equity will not allow a lessor to declare a forfeiture under the termination clause in a lease when the alleged breach was caused by the lessor's own conduct. Dunlapv. Macke, 233 Ala. 297, 171 So. 721 (1937).
Mr. Dixson insists that any threats he may have made were threats in word only and were not the cause of the breach of the covenant to reclaim. He further asserts that any threats he may have made were given after the breach of the covenant to reclaim. Some of the evidence concerning Mr. Dixson's statements, which allegedly prevented the mining of coal, is contained in the transcript of the first trial, but most of the testimony regarding this matter was heard ore tenus by the court in the second trial. The rule is that where evidence is heard ore tenus, or partly so, the trial court's decree will not be disturbed unless it is plainly and palpably erroneous.Hall v. Polk, 363 So.2d 300 (Ala. 1978); Air Movers of America,Inc. v. State National Bank, 293 Ala. 312, 302 So.2d 517
(1974).
There is sufficient credible evidence in the record, regarding Mr. Dixson's threats, to support the trial court's decree. Our affirmance, however, need not be based upon this issue alone. In order to declare a forfeiture for breach of the covenant to reclaim (under the lease's terms), there must be shown both a cessation of mining activity and written notice of default specifying the nature of the breach. The Dixsons insist that filing suit in the first case is sufficient notice of default to support cancellation in the second case. Nevertheless, the lessee must be given 60 days from the receipt of notice in which to take curative action. The record will support a conclusion that mining activity had not ceased (in other words, that C. G. had not voluntarily stopped mining coal), or that proper written notice specifying the alleged breach had *Page 1163 
not been given, or that C. G. had not been given 60 days to take curative action. In short, there is evidence in the record, heard ore tenus, to support the trial court's judgment on several grounds.
The Dixsons contend that the trial judge's judgment is inconsistent with the jury's verdict against C. G. for $10,000. They state that the jury must have found a material breach and must have found that Mr. Dixson was not at fault.
The two verdicts are not inconsistent. Under the charges given, the jury need not have found a material breach in order to award damages. Moreover, the jury need not have considered the issues of cessation of mining activity, proper written notice, and opportunity for curative action which were involved in the prayer for cancellation tried to the court. The jury could have decided that damages were due to be assessed for breaches of the covenants of the lease but the court could have concluded that lessors were not due to have the lease canceled.
The parties agreed to a joint trial of the legal and equitable issues. This agreement, embodied in the pre-trial order, controlled the subsequent course of the action. Rule 16, ARCP. The use of joint trials of legal and equitable claims arising from the same or similar facts is proper under our rules and results in a saving of the time and expense occasioned by separate trials. See Rule 39, ARCP, and comments thereto. The Dixsons had their jury trial on the legal issues, as requested. Under our rules, "[a]fter the legal claim has been determined, the court, in the light of the jury's verdict on the common issues, may decide whether to award any equitable relief." Donaldson Walls, Merger of Law and Equity in Alabama — Some Considerations, 33 Ala. Lawyer 134, 149 (1972). The court is not required to grant the equitable relief merely because the plaintiffs prevailed on the legal claim. Here, the trial court's denial of equitable relief is supported by the record and will not be disturbed on this appeal.
For the foregoing reasons, this cause is due to be affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.