Jim Evans appeals from a summary judgment for National Microsystems, Inc. (hereinafter referred to as "Microsystems"), on his claims of breach of contract and fraud. We affirm the summary judgment as to the fraud claim, but reverse and remand as to the breach of contract claim.
In 1982, Evans was employed by National Industries, Inc., but in 1987 he went to work for Microsystems. Microsystems is a spin-off corporation of National Industries, and apparently National Industries and Microsystems had each agreed not to hire the other's employees without the other's consent. In 1989, due to poor sales and financial *Page 208 
difficulties, Microsystems decided to reduce its work force. In early May 1989, it circulated the following memorandum to all of its employees:
 "A shift in the Company's product strategy has resulted in a reduction of our existing work force. The implementation of these changes [is] intended to strengthen the Company's competitive structure and to help achieve the Company's long range goals and objectives.
 "Severance pay will be given to employees who are dismissed. The amount of severance compensation will be based on length of service and position with the Company. The severance compensation will be paid on the normal payment cycle (either weekly or bi-weekly) for that employee over the indicated severance period.
 "Group insurance will be paid by the Company for the remainder of May and for the month [of] June. Beginning in July should the employee wish to continue coverage under our group policy that employee will be required to pay their premiums under the COBRA provisions of our Blue Cross/Blue Shield contract. The COBRA monthly premiums are $212.16 for family coverage and $84.66 for single coverage.
 "Employees being dismissed are eligible for unemployment benefits. When applying for benefits the employee must claim any severance paid to them. The State will issue the Company a questionnaire for each applicant and this amount is required to be disclosed.
 "All employees being dismissed will be paid for any accrued vacation and sick days.
 "All dismissed employees should be instructed to clean out their work areas immediately. No employee will be allowed back in the plant subsequent to their dismissal."
At the time the memorandum was circulated, Evans was unaware that his job was to be eliminated. On May 22, 1989, in a meeting with George Rutland (a member of Microsystems' management), Evans was told that he was to be terminated. In the same conversation, Rutland told Evans that he would receive severance pay equal to three months' salary and that if he would submit a letter of resignation then he would receive a letter stating Microsystems' consent for National Industries to hire him. The same offer was presented to Evans by Charles Woods, head of accounting and/or personnel at Microsystems, but at a later date.
Evans submitted his letter of resignation to Rutland on Thursday, May 25, 1989. Between Monday, May 22, and Thursday, May 25, Evans sought employment with National Industries and received an offer from it on the evening of May 23, conditional upon Evans's leaving Microsystems and obtaining a letter of consent from Microsystems. He did not work on Tuesday, May 23, or Wednesday, May 24, but reported to work on Thursday and Friday, May 25 and 26. He went to work for National Industries on May 30, 1989.
Evans received his letter of consent from Microsystems and was paid through the week of May 22, 1989, but never received the promised severance pay. When he asked why he had not been given the promised severance pay, Evans was told that he would not receive severance pay because he had immediately obtained other employment.
Evans contends that the memorandum circulated to all Microsystems employees and the representation made through Rutland and Woods, that he would be paid three months' severance pay if he resigned, was an offer and that he had accepted it by continuing to work for Microsystems through May 29, 1989, and by tendering his resignation as requested. Evans further argues that Microsystems fraudulently induced him to resign by the promise of severance pay. Microsystems replied by saying that: (1) Evans was an employee at will and thus there was no obligation to give him severance pay; (2) the promise of severance pay was too indefinite to be an offer; and (3) Evans had no right to severance pay, and, therefore, no fraud was committed. *Page 209 
In its order, the trial court stated that the memorandum's promise of severance pay was not itself specific enough to be an offer, yet "ripened" into an offer when Rutland and Woods promised Evans that the severance pay would equal three months' salary. The trial court held that Evans's continuing employment with Microsystems did not constitute an acceptance of the offer of severance pay; thus, it held, there was no genuine issue of material fact concerning whether Evans accepted the offer. The trial court went on to hold that submission of the resignation letter was not sufficient consideration to support the promise of severance pay and that Evans had failed to adduce any evidence that Microsystems did not intend to honor its promise at the time it was made.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter summary judgment. In order to enter summary judgment, the trial court must determine: (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to a judgment as a matter of law.RNH, Inc. v. Beatty, 571 So.2d 1039 (Ala. 1990).
 "In determining whether summary judgment was properly granted, the trial court must view the motion in a light most favorable to the non-movant, Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981). In reviewing the propriety of a summary judgment, this Court is limited to reviewing the same factors, the same evidence, considered by the trial court when it granted the motion. Prudential Insurance Co. v. Coleman, 428 So.2d 593 (Ala. 1983)."
Turner v. Systems Fuel, Inc., 475 So.2d 539 (Ala. 1985). Rule 56 is to be read in conjunction with the "substantial evidence rule" (§ 12-21-12, Ala. Code 1975) for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
The trial judge based his holding upon Hoffman-La Roche, Inc.v. Campbell, 512 So.2d 725 (Ala. 1987). In that case we determined that an employee's continuing to work after a promise was made in a handbook was sufficient to constitute a binding unilateral contract, and we said that the existence of such a contract could be determined by employing the following analysis:
 "First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
Id. at 735.
Extending the Hoffman-La Roche analysis to this case, the trial court reasoned that the first two elements had been shown; it said that the memorandum was made "ripe" by the actions of Rutland and Wood, was specific enough to be an offer, and was communicated to Evans via its distribution. However, the trial court held that the third element of the analysis had not been shown. The trial judge stated: "Based on the undisputed facts in this case, the Court finds that the resignation neither conferred a pecuniary benefit on Microsystems nor caused any trouble, injury, inconvenience, prejudice or detriment to Evans." (C.R. 46). The court reasoned that there was no genuine issue of material fact concerning whether Evans had accepted the offer, because he did not continue in the employ of Microsystems based on an offer of severance pay.
We disagree. The third element of the Hoffman-La Roche
analysis is that "the employee must have accepted the offer by retaining employment after he has become generally aware of the offer," and that case states, "His actual performance supplies *Page 210 
the necessary consideration." 512 So.2d at 735. Under the fact situation in Hoffman-La Roche, the employee showed his acceptance of the offer made to him by continuing on the job. Under the fact situation presented in this case, the employee showed his acceptance of the offer made to him by tendering his letter of resignation. His performance — the tendering of his resignation — eliminated his right to any unemployment benefits he might collect and was sufficient consideration for Microsystems' promise of severance pay. Microsystems derived a pecuniary benefit from Evans's agreement to give up his entitlement to unemployment compensation, because under Alabama law the payment of unemployment benefits increases an employer's contribution rate. § 25-4-54, Code 1975. Indeed, the memorandum states that "[e]mployees being dismissed are eligible for unemployment benefits."
Evans did not raise on appeal the ruling on his claim of fraud. Therefore, we will not review it. General Finance Corp.v. Smith, 505 So.2d 1045 (Ala. 1987).
For the reasons stated above, the trial court erred in granting Microsystems' motion for summary judgment on the contract claim. The judgment is due to be affirmed as to the fraud claim and reversed as to the contract claim, and the cause is due to be remanded for further proceedings on the contract claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.