The plaintiff, Kyle W. Paseur, appeals from a summary judgment in favor of the defendant City of Huntsville[1] in Paseur's *Page 970 
breach of contract action against the City. The City appeals from the trial court's denial of the City's motion to strike evidence submitted by Paseur in opposition to the summary judgment motion. We affirm the summary judgment and dismiss the City's appeal as moot.
In 1989, Paseur was employed by the fire department of the City of Huntsville, and he became a "fire fighter" in February 1991. In February 1991, the City published a "Career Opportunities Announcement" ("COA"), which listed current or anticipated City employment vacancies, including the position in the fire department of "fire driver-engineer." The COA stated the salary for the position of fire driver-engineer and, in a section entitled "Promotional Procedure," set out the eligibility requirements for the position.
When the February 1991 COA was published, the City of Huntsville's "Personnel Policies and Procedures Manual" contained a section entitled "Minimum Promotional Entry Rate for Special Classes of Positions (Non-Overlapping Salaries)." The effect of this section was to provide for a larger salary increase for promotions to specified positions of employment with the City:
 "8.6 Minimum Promotional Entry Rate for Special Classes of Positions (Non-Overlapping Salaries)
 The minimum promotional entry rate for the classes of [specified positions in the police department], Fire Driver-Engineer, [and other specified positions in the fire department] shall be that rate within the salary range next highest above the maximum rate of the former salary range from which the promotional candidates are authorized."
Paseur was one of 27 applicants who qualified for the position of fire driver-engineer advertised in the February 1991 COA. On July 6, 1991, the applicants' names were placed on a register in an order determined by the applicants' overall scores on the various tests. The register was effective for a period of one year from the date of publication. Paseur's name was ninth on the list.
The top eight applicants were promoted to fire driver-engineer and began receiving the annual salary of $30,263 — computed on the basis of section 8.6 of the "Personnel Policies and Procedures Manual."
In April 1992, after the promotion of the top eight on the fire driver-engineer register, the Huntsville City Council passed Ordinance No. 92-215, which rescinded Section 8.6 of the "Personnel Policies and Procedures Manual" (as well as another section of the manual that referred to Section 8.6). Following the adoption of Ordinance No. 92-215, the promotion of a fire department employee to fire driver-engineer would carry a salary increase of approximately 5% — the normal salary increase for promotions of City of Huntsville employees.
In June 1992, Paseur met with the fire chief, the deputy chief, and the director of fire department training. The official department notes regarding that meeting reflect the following:
 "The purpose of the meeting was to inform Firefighter Paseur that an opening for Fire Driver-Engineer would be effective July 1, 1992, and [that] the minimum promotional entry rate for special classes positions [Section 8.6], was rescinded by Ordinance No. 92-215, adopted and approved on April 23, 1992. Firefighter Paseur indicated that he wanted to be promoted to Driver-Engineer at a 5% increase above his present salary."
In his affidavit in opposition to the City's summary judgment motion, Paseur stated that he "did not agree with the salary, and [that he] expected to make the same as the other eight who were promoted," and he said, "I relied on the Career Opportunities Announcement salary when I applied to Driver School and accepted the position. . . . At no time did I agree to accept less than the starting salary of $30,263."
Paseur sued the City of Huntsville, alleging breach of contract. The trial court granted the City's motion for summary judgment, and Paseur appealed from the resulting judgment. The City appealed from the *Page 971 
trial court's order denying the City's motion to strike evidence submitted by Paseur in opposition to the summary judgment motion.
Paseur contends that the February 1991 COA was an offer of employment that bound the City to pay him the $30,263 salary for the position of fire driver-engineer listed in the COA. Paseur argues that when he fulfilled the requirements for the position and his name was placed on the register of qualified applicants, he had accepted the City's offer; therefore, says Paseur, when the City refused to pay him the salary advertised in the February 1991 COA, the City breached a contract between it and Paseur. We disagree.
Paseur argues first that, under certain circumstances, an employer's giving a prospective employee a company handbook or manual may be construed as a binding offer of a contract of employment (see, e.g., Hoffman-La Roche, Inc. v. Campbell,512 So.2d 725 (Ala. 1987)), and that the holdings of Hoffman-LaRoche and its progeny (commonly referred to as "the handbook cases"[2]) may be used to analyze cases involving company documents other than "handbooks" or "manuals." In Evans v.National Microsystems, Inc., 576 So.2d 207 (Ala. 1991), for example, the document the plaintiff claimed constituted an offer by his employer was a company-wide memorandum. While these assertions are correct, Paseur's argument that theHoffman-La Roche rationale supports his claim is without merit.
According to Paseur, this Court must hold that the February 1991 COA was a binding offer of employment by the City of Huntsville to the qualified applicants listed on the register and that once Pasuer qualified for the advertised position the City's failure to pay him the salary stated in the COA was a breach of the contract. However, Paseur's contention misconstrues the Hoffman-La Roche holding; that holding was to the effect that the party seeking to prove that a particular handbook, manual, or other company document amounts to a binding offer of an employment contract must meet certain requisites set forth in Hoffman-La Roche:
 "In summary, we find that the language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
Hoffman-La Roche, 512 So.2d at 735. These requirements have been consistently reaffirmed and applied by this Court. SeeEvans, supra; Mooney v. Harco Drug, Inc., 611 So.2d 235
(Ala. 1992); and Stinson v. American Sterilizer Co.,570 So.2d 618 (Ala. 1990).
Further, in Bell v. South Central Bell, 564 So.2d 46
(Ala. 1990), we held:
 "To satisfy the first requirement in the Hoffman-La Roche analysis, 'the language used in the handbook [or other document] must be specific enough to constitute an actual offer rather than a mere general statement of policy.' Hoffman-La Roche, 512 So.2d at 734. Whether the language in the handbook [or other document] was intended to be an offer is determined by reference to the reasonable meaning of the parties' external and objective manifestations, rather than by their uncommunicated beliefs. Mayo v. Andress, 373 So.2d 620, 623-24 (Ala. 1979)."
564 So.2d at 48.
Viewing the evidence in a light most favorable to Paseur, and applying the holdings in Hoffman-La Roche and Bell, we conclude that the City's February 1991 COA, advertising "current or anticipated vacancies," was not intended to be, nor could it *Page 972 
reasonably be construed as, a binding offer of an employment contract with the City.
In order to amount to a binding offer to Paseur to enter an employment contract, the language of the COA must be sufficiently specific to constitute an offer. Our review of the entire document, however, convinces us that the COA was designed to be an informational tool, intended to advertise City employment vacancies and to give notice of the requirements that applicants for those vacancies must meet in order to be considered for employment.
The first section of the COA read:
 "The City of Huntsville, in promoting community awareness for career opportunities, announces the current or anticipated vacancies. Application information is listed on the back of this announcement."
(Emphasis supplied.)
The second page of the COA set out "Application Information" and "Hiring Process" sections, which provided, in part, as follows:
 "Career Opportunity Announcements are distributed to various educational and training centers as well as organizations having related interests, thereby stimulating community awareness for those individuals who wish to seek a career with the City of Huntsville."
 "When a vacancy occurs, the best qualified individuals are referred to the appointing authority from the register of eligible applicants. The appointing authority shall contact the referred applicants for final selection consideration. The final selection of an applicant will be made by the appointing authority. . . ."
(Emphasis supplied.)
Finally, as part of the COA, an attached statement styled "Promotional Procedure: Fire Driver-Engineer" provided that the names of the highest ranking candidates on the register of applicants "will be referred for consideration by the Fire Chief." That statement went on to provide that the qualified candidates would be interviewed before the Fire Chief made his final certification of individuals who would be "eligible forselection after interviews are completed." (Emphasis added.)
We agree with the City that an applicant's completing the requirements and procedures set out in the COA and its attachments merely made that applicant a qualified and eligible candidate for vacancies in City employment positions. Indeed, as the City points out, the COA is a type of document commonly used by many entities to promote awareness of career opportunities, to seek applications for these positions from interested and qualified persons, and to educate applicants as to the requirements for the positions. To interpret the COA as a binding offer to Paseur, rather than as part of a hiring process, would yield frightening results and would directly contradict established contract law. See 17 C.J.S.Contracts § 46 (1963); and 1 Williston On Contracts § 4:7 (4th ed. 1990).
We hold, therefore, that the summary judgment was properly entered for the City of Huntsville on Paseur's breach of contract claim, and that judgment is hereby affirmed. That holding necessarily moots the issue raised by the City in its appeal from the denial of its motion to strike evidence; therefore, the City's appeal is dismissed as moot.
This opinion was prepared by retired Justice RICHARD L. JONES, sitting as a Justice of this Court pursuant to §12-18-10(e), Ala. Code 1975, and it is hereby adopted as that of the Court.
1930435 — AFFIRMED.
1930516 — DISMISSED AS MOOT.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Paseur's original complaint named the City and numerous City employees as defendants. Although Paseur's notice of appeal to this Court names "City of Huntsville, et al." as the appellees, we note that the trial court had granted Paseur's motion to dismiss all defendants except the City. We will, therefore, refer to the City as a single defendant/appellee throughout this opinion.
[2] For example, see Campisi v. Scoles Cadillac, Inc.,611 So.2d 296 (Ala. 1992); Mooney v. Harco Drug, Inc., 611 So.2d 235
(Ala. 1992); Evans v. National Microsystems, Inc., 576 So.2d 207
(Ala. 1991); and Stinson v. American Sterilizer Co.,570 So.2d 618 (Ala. 1990). *Page 973