CRAWLEY, Judge.
In 1992, Billy Irvin was employed by the Community Bank (the “Bank”) as a vice-president and loan officer. He worked in the Bank’s branch located in Blountsville. In May 1995, the Bank offered Irvin a promotion to president of the Snead branch of the Bank, with the express condition that Irvin move to the Snead area. Irvin expressed some concern over the possibility that he might take a loss on his house if he attempted to sell; however, he was assured that the Bank was drafting a policy that would allow the Bank to purchase the homes of relocated Bank officers. He accepted the promotion and began serving as the Snead branch president on May 15,1995.
According to Irvin, the Bank responded to his concerns by enacting a “relocation policy,” under which the Bank would offer to purchase the home of a promoted bank officer in order to effectuate a speedy and problem-free relocation. The relocation policy was approved by the Bank on June 20, 1995, and it was distributed to Irvin and the Bank’s other employees on or about July 10. The policy reads:
“Community Bank will offer to purchase the existing home at a price to be determined by an appraisal performed by the Senior Appraiser of Community Bank Appraisal, Inc., based upon the reasonable market value for a sale within 6 to 12 months market exposure. Community Bank would not expect to suffer any loss in the sale of such Real Estate, except for the cost of funds for the period of time necessary to sell said home. After the appraisal is completed, the officer shall have 10 days to accept or reject such offer.
“The Board of Directors will require a full and complete relocation to occur within 30 days whether the offer is accepted or rejected.”
Although he accepted the promotion and began serving as president of the Snead branch, Irvin made no attempts to sell his Blountsville home between May and September 1995. In his deposition testimony, Irvin states that he was waiting for the Bank to make its offer under the relocation policy. He did, however, attempt, without success, to find a suitable home in Snead. In September, in accordance with the relocation policy, the Bank had Irvin’s house appraised, and it made an offer on the house on September 13, 1995. Irvin expressed some dissatisfaction with the offer, but he did not accept or reject it. However, on September 21, 1995, before the expiration of the 10-day period in which he was allowed to accept or reject the Bank’s offer, Irvin was terminated.
He sued the Bank, alleging that the Bank had breached its contract with him and requesting damages to compensate him for lost benefits and wages, mental anguish, and loss of reputation in the banking community. The trial court entered a summary judgment for the Bank. Irvin appealed to the Alabama Supreme Court, which transferred the case to this court pursuant to Ala.Code 1975, § 12-2-7(6). We reverse and remand.
*371 Our review of a summary judgment is de novo; we review the judgment by the same standard applied in the trial court. A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When a party moves for a summary judgment, it “must make a prima facie showing that ... no genuine issues of material fact [exist] and that [it] is entitled to a judgment as a matter of law.” Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). Once the movant has made this showing, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). See West, 547 So.2d at 871 (Ala.1989), and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for further discussion of the application of the summary judgment standard.
Irvin begins his argument by stating that the Bank terminated him for failing to relocate to Snead before the time for his acceptance or rejection of the Bank’s offer on his house had expired. He argues that the Bank’s action resulted in a breach of contract. A breach of contract is defined as a “failure, without legal excuse, to perform any promise which forms the whole or part of a contract.” Black’s Law Dictionary 188 (6th ed.1990); see also 17A Am.Jur.2d Contracts § 716 (1991). To establish that a breach of contract occurred, Irvin must prove: “(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the [Bank’s] nonperformance, and (4) damages.” Southern Medical Health Systems, Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995) (citations omitted).
Irvin correctly argues that an employer’s policies, such as the Bank’s relocation policy, can create a binding contract between the employer and its employees. See Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 735 (Ala.1987). Although Hoffman-La Roche focused on the language contained in an employee handbook, the ease has been interpreted to cover not only handbooks, but other employment policies as well. See Howard v. Wolff Broadcasting Corp., 611 So.2d 307, 310 (Ala.1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1849, 123 L.Ed.2d 473 (1993); see also Evans v. National Microsystems, Inc., 576 So.2d 207 (Ala.1991)(involving not a handbook, but instead a memorandum distributed to all employees). Irvin’s argument is that the Bank’s relocation policy was a binding contract and that, by terminating him before the expiration of the 10 days allowed for his response to the Bank’s offer, the Bank made his performance of the contract impossible and thereby breached that contract. See Dixson v. C. & G. Excavating, Inc., 364 So.2d 1160, 1162 (Ala.1978); Big Thicket Broadcasting Co. v. Santos, 594 So.2d 1241, 1244 (Ala.Civ.App.1991).
In Hoffman-La Roche, the Alabama Supreme Court set out the appropriate analysis for determining whether the language of an employment policy is “sufficient to constitute an offer to create a binding unilateral contract.” Hoffman-La Roche, 512 So.2d at 735.
“First, the language contained in the [policy] must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the [policy], or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration.”
Id. Whether an employment policy meets the Hoffman-La Roche test is a question of law to be determined by the court. Stinson v. American Sterilizer Co., 570 So.2d 618, 621 (Ala.1990).
The basic facts in this ease are undisputed; and, when the test enunciated in Hoffman-La Roche is applied to those facts, the conclusion that the relocation policy was sufficient to constitute an offer to make a unilateral contract is inescapable. The Bank adopted the relocation policy. That policy *372 contains language specific enough to constitute an offer to Irvin. The offer was communicated to Irvin when the policy was distributed to the employees on or about July 10, 1995. Finally, Irvin, in reliance on assurances that a relocation policy was being enacted, accepted a promotion that required him to relocate. See Evans, 576 So.2d at 210 (indicating that the court should consider the facts of the individual case when determining what performance is necessary under the Hoffman-La Roche test).[1]
Under the Hoffman-La Roche test, the Bank’s relocation policy created an offer to Irvin for a unilateral contract. Irvin accepted that offer by his reliance. Pursuant to that contract, the Bank was required to appraise Irvin’s home, make an offer on that home, and allow Irvin 10 days to accept or reject that offer. Irvin was required to accept or reject the Bank’s offer within 10 days and was required, regardless of whether he accepted or rejected the Bank’s offer, to relocate within 30 days of the expiration of the 10-day acceptance period. The Bank, by terminating Irvin before the expiration of the 10-day acceptance period, breached its contract with Irvin. In addition, the Bank’s actions prevented Irvin from fulfilling his obligations under the contract. See Dixson, 364 So.2d at 1162; Big Thicket Broadcasting Co., 594 So.2d at 1244. The Bank is not permitted to take advantage of Irvin’s failure to perform because it caused his nonperformance. See Dixson, 364 So.2d at 1162; Big Thicket Broadcasting Co., 594 So.2d at 1244.
The Bank’s stated reason for terminating Irvin was that he failed to relocate to Snead within an acceptable time; however, according to the relocation policy, at the time of his termination, Irvin had 32 more days to relocate to Snead. The Bank argues that Irvin was an at-will employee and that it could terminate him for any reason, or even for no reason. See Howard, 611 So.2d at 309-10 (explaining the at-will doctrine). We agree that, up until the time the relocation policy was communicated to Irvin, he was an at-will employee. Had the Bank chosen to terminate Irvin’s employment before it adopted the relocation policy, it could have done so for any reason. Even though the Bank could have terminated Irvin when it did, for any other reason, the relocation policy prevented the Bank from terminating Irvin for faffing to move to Snead before the expiration of the stated time for relocation. Under the law as stated in Hoffman-La Roche and its progeny, the relocation policy supplied the terms of a contract between the Bank and Irvin. That contract abrogated Irvin’s at-will employment for purposes of relocation pursuant to its terms. The contract provided the time frame in which an officer was expected to relocate. Therefore, while Irvin had time remaining under the contract, he could not be terminated for faffing to relocate.
Although the relocation policy does not limit the time within which the Bank must make its offer on the officer’s home, it does specify the time within which the officer is expected to relocate. In his deposition, Irvin testified that he understood that an officer was required to relocate within 30 days of either accepting or rejecting the Bank’s offer. No other testimony concerning when an officer was expected to relocate appears in the record. However, under the Bank’s relocation policy, Irvin had two more days to accept or reject the Bank’s offer. He then had 30 more days to relocate to Snead, regardless of whether he accepted or rejected the Bank’s offer. The Bank’s failure to act *373 in accordance with its own relocation policy-before September does not permit the Bank to terminate Irvin for failing to sell his home and relocate to Snead before September 21.
By terminating Irvin before the expiration of the time allowed by the relocation policy, the Bank breached its contract with Irvin and prevented his performance. The Bank cannot benefit from its breach of its own contract. Therefore, the summary judgment for the Bank is reversed and the case is remanded with instructions for the trial court to enter an order holding the Bank liable for breach of contract and then to hold a trial on the issue of damages.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.

. In Evans, the company, due to financial problems, was compelled to reduce its workforce. Evans, 576 So.2d at 207-08. The company circulated a memorandum to its employees concerning the dismissal of its employees; that memorandum indicated that the company would offer severance pay to those employees dismissed. Id. at 208. Evans was informed that his job was being eliminated and was assured by management that, if he tendered a letter of resignation, he would receive three months' severance pay and a letter consenting to his employment by another company. Id. Evans presented a letter of resignation as requested; however, he never received the promised severance pay. Id. The trial court entered a summary judgment for the employer. Id. at 209. After applying the Hoffman-La Roche test, the trial court held that, because Evans did not continue in the service of the company, he could not have accepted the company’s offer. Id. at 209. The supreme court reversed, holding that, under the circumstances of the case, Evans’s tender of his resignation was the performance necessary under Hoffman-La Roche. Id. at 209-10.