[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11424
Non-Argument Calendar

_____

D.C. Docket No. 5:17-cv-02150-LCB

SHIRLEY M. JOHNSON,
TENEA R. STODDARD,
JILL K. RANES,

Plaintiffs-Appellants,

versus

AIRBUS DEFENSE & SPACE INC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 26, 2021)

Before MARTIN, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Shirley Johnson, Tenea Stoddard, and Jill Ranes (collectively, "Plaintiffs") filed this action against Airbus Defense & Space, Inc. ("ADSI"), for sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), *see* 42 U.S.C. § 2000e-2(a), and for breach of contract. They now appeal the district court's order granting summary judgment in favor of ADSI on their claims. Finding no reversible error, and for the reasons stated below, we affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY

In 2006, the United States Army awarded ADSI, an aerospace company based in Huntsville, Alabama, a ten-year contract to deliver light utility helicopters known as Lakota helicopters. By 2016, no longer needing employees in Huntsville with the wrap-up of the ten-year contract, ADSI transitioned the remaining projects to an affiliate company, Airbus Helicopters, Inc. ("AHI"), with various locations across the south, including Texas. Prior to the transition, AHI President Mike Cosentino and AHI Director of Human Resources Genevieve Findlay engaged in several discussions with ADSI employees about what they could expect as the transition commenced. Plaintiffs, who were at-will employees of ADSI, were promised several times by Cosentino and Findlay either substantially similar positions at AHI or a severance payment. For the employee to be offered severance payment, he or she must have been offered a position at AHI that met one of the three following conditions: (1) the job required an immediate change in location; (2) the job included

2

substantially lesser pay; or (3) the job constituted substantially lesser status. Findlay, a female, made the decision regarding who received severance payment based on these three factors.

Thirteen ADSI employees were laid off during the contract wind-down and transition, but AHI offered each of the three Plaintiffs a position. And each was allegedly assured she would not be required to relocate from Huntsville, at least for the first year. However, ADSI made clear that the managers at AHI reserved the right to move the positions to Texas or Mississippi. Even if that were to occur, however, Cosentino and Findlay stated that an employee could prove that his or her role could be done remotely from Huntsville. This promise of being able to remain in Huntsville is the basis of Plaintiffs' Title VII and breach-of-contract claims. In addition to this oral offer by Cosentino and Findlay, in early December 2016, each of the three Plaintiffs also received offer letters from AHI. The letters expressly stated that "the position at the current time will remain in Huntsville, [and] [o]ver the course of 2017 a determination will be made regarding the future working location of this position."

Consistent with the three factors articulated above and subject to Findlay's discretion, AHI did not offer the Plaintiffs severance payments because AHI offered each of the three Plaintiffs a position with the same salary, with "many similarities in the job," and a promise to remain in Huntsville for twelve months. After AHI

informed each of the Plaintiffs accordingly, Johnson and Stoddard each declined the position at AHI because they believed they ultimately would be required to relocate. Ranes, on the other hand, conditionally accepted the position with AHI if AHI allowed her to remain in Huntsville permanently. In February 2017, AHI informed Ranes that she would be required to relocate to Texas or Mississippi following the twelve-month period, or January 2018. Ranes rescinded her acceptance and inquired about the possibility of receiving a severance payment.

Each of the Plaintiffs completed the terms of their employment with ADSI before leaving the company, and each believed that, once they left ADSI, that would trigger their right to a severance payment. They claim that they later learned of an alleged sex discrepancy in the payout of severance payments i.e., that male employees received severance packages because they were either not offered positions at AHI or were offered positions that were not equal in pay, status, or would require them to relocate. And, because no woman received a severance package, Plaintiffs believe that the motivation for denying them severance was based on sex.

Plaintiffs filed a two-count action against ADSI for its refusal to offer them severance payment, alleging one count for sex discrimination under Title VII and one count for breach of contract. As the basis of their claims, Plaintiffs alleged that, although they were offered employment with AHI, the positions were not "substantially similar" because they were required to relocate outside of Huntsville,

4

and that, consequently, they were entitled to severance pay. Plaintiffs sought a declaratory judgment, back pay, compensatory and punitive damages, and attorney's fees and costs.

Following discovery, ADSI moved for summary judgment. It argued that Plaintiffs could not make a prima facie case for sex discrimination because each Plaintiff had been offered one year of equivalent employment in Huntsville by AHI and, thus, had suffered no adverse employment action. Further, it argued that Plaintiffs had not, and could not, show a similarly-situated comparator, as they did not share a job title with any other employee. And, in any event, ADSI argued that it had a legitimate, non-discriminatory reason for not offering the plaintiffs severance pay: Findlay, a female decisionmaker, had the discretion to determine whether the AHI positions were substantially similar to their positions at ADSI.

With respect to Plaintiffs' breach-of-contract claim, ADSI argued that Plaintiffs were at-will employees who could have been terminated at any time and that any statements regarding severance payments did not change that employment contract. In its view, the severance discussions happened in the context of company-wide meetings, not as any individualized agreements for severance between ADSI and Plaintiffs. Even if a contract existed, ADSI argued that there was no breach of contract because Plaintiffs were all offered substantially similar positions at AHI and declined, causing them to not be entitled to severance under ADSI's criteria.

5

In response to ADSI's motion for summary judgment, Plaintiffs submitted the affidavit of Dale McElyea, Director of Contracts for the Lakota program at ADSI and Johnson's and Ranes's supervisor. McElyea attested that Cosentino and Findlay, at two separate meetings, had informed the Huntsville employees that if AHI did not offer the same jobs in Huntsville, the employees would receive severance packages. McElyea received a job offer from AHI for a position that was not equivalent to his position at ADSI with the same base salary. He declined the offer and received a severance package from ADSI. He also attested that he asked Cosentino why Johnson and Ranes were not receiving severance when they had been told that a change in location would trigger a right to severance, and Cosentino simply replied that he was not paying severance. ADSI then moved to strike McElyea's affidavit under Federal Rule of Civil Procedure 37, arguing that Plaintiffs did not disclose McElyea as a witness during discovery and that it was prejudiced from this nondisclosure.

The district court granted ADSI's motion for summary judgment and motion to strike McElyea's affidavit. As to Plaintiffs' sex-discrimination claim, applying the *McDonnell Douglas*[1] framework, the district court agreed that, construing the facts in the light most favorably to Plaintiffs, ADSI denying severance payment could be an adverse employment action. However, it concluded that Plaintiffs had

---

[1] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

failed to present evidence that ADSI treated similarly situated male employees more favorably. Specifically, the district court found that the male employees who had received severance were not adequate comparators because Plaintiffs had not shown that those men (1) were offered an "equivalent" position with AHI (as determined by ADSI), (2) rejected the offer, and (3) then were offered a severance package.[2] The district court also found that Plaintiffs failed to present evidence of a "convincing mosaic" to warrant an inference of intentional discrimination, noting that they had only shown a few random sexist remarks by male employees that, while inappropriate, did not rise to the level of discrimination in this case.

Next, the district court found that ADSI had offered a legitimate, non-discriminatory reason for denying the Plaintiffs severance: Findlay had determined that their AHI offers were equivalent in status and pay, and the positions would be located in Huntsville for an initial period of time. The district court further determined that Plaintiffs had not, and could not, show that the reason was pretext for discrimination. It noted that whether a position with AHI was equivalent to the current position was within ADSI's—not Plaintiffs'—discretion and that, while Plaintiffs may have believed that ADSI exercised its discretion unfairly in their

---

[2] We note that the district court did not name these male employees. However, we assume it was referring to Terry Aiken, Jeff Davies, and Roger "Dale" McElyea, the three men who were offered severance because their AHI offers resulted in a demotion in status.

7

individual cases, they failed to come forward with evidence that ADSI had applied the policy differently to men and women.

As to ADSI's motion to strike McElyea's affidavit, the district court found that Plaintiffs failed to satisfy their duty under Federal Rule of Civil Procedure 26(a) to disclose McElyea as a witness. The district court rejected Plaintiffs' argument that the nondisclosure was harmless because ADSI was aware of who McElyea was, instead finding that ADSI's inability to depose McElyea prejudiced ADSI.

Finally, the district court chose to exercise supplemental jurisdiction over Plaintiffs' claim for breach of contract, noting that their employment was at-will and that there was undisputed testimony that Plaintiffs all understood their employment as such. The district court found that Plaintiffs had not cited to any authority for the proposition that a supervisor's statements indicating that severance may be available constituted a binding contract apart from their at-will employment status.

After the district court entered judgment in favor of ADSI, Plaintiffs timely filed this appeal.

## II.    ANALYSIS

On appeal, Plaintiffs raise three issues. First, they argue the district court abused its discretion by striking McElyea's affidavit. Next, they argue the district court did not apply the proper legal framework in concluding that they failed to establish a prima facie case of sex discrimination. Finally, they argue the district

8

court erred in finding that ADSI's representations concerning severance payments did not constitute an enforceable contract. We discuss each argument in turn.

### A.    ADSI's Motion to Strike Plaintiffs' Witness McElyea's Affidavit

We review a district court's rulings on discovery matters, including a motion to strike evidence, for abuse of discretion. *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1208 (11th Cir. 1997). A district court has broad discretion over discovery, and we will not reverse the court's decision "unless a clearly erroneous principle of law is applied, or no evidence rationally supports the decision." *Hancock v. Hobbs*, 967 F.2d 462, 468 (11th Cir. 1992) (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991)).

Rule 26 requires a party to disclose "each individual likely to have discoverable information" and imposes an on-going duty to supplement or correct such disclosures. Fed. R. Civ. P. 26(a), (e). If a party fails to comply with the disclosure requirements of Rule 26, then it is not allowed to use the undisclosed information or witness as evidence on a motion unless the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether an undisclosed witness should be excluded under Rule 37(c), courts typically consider "the explanation for the failure to disclose the witness, the importance of testimony, and the prejudice to the opposing party." *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008) (quoting *Fabrica Italian*

*Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir. 1982)).

Plaintiffs' only explanation for the untimely disclosure of McElyea is that they learned of "new information"[3] at Cosentino's deposition and needed to rebut it through McElyea's affidavit testimony.  In other words, they insist they did not realize McElyea might be a necessary witness until the deposition of Cosentino on May 30, 2019.  This explanation is implausible.  Cosentino's deposition preceded both the discovery deadline of June 28, 2019, and the dispositive-motion deadline of July 31, 2019.  Plaintiffs had ample opportunity to disclose McElyea timely but did not do so until August 30, 2019.  They offer no other excuse for their delay, and we are otherwise aware of none.

Plaintiffs also seem to indicate they were not required to disclose McElyea because he was a rebuttal witness, relying on *United States v. Mayer*, No. 8:03-cv-415-T-26TGW, 2004 U.S. Dist. LEXIS 31610, at *7 (M.D. Fla. Sept. 14, 2004). But, besides the fact that this argument is unsupported by the Federal Rules of Civil Procedure, *Mayer* does not support this argument.  Even further, we find *Mayer* distinguishable because, there, the need for the declarant's testimony was *not* known *before* summary judgment.  However, here, Plaintiffs do not dispute they knew of

---

[3] Specifically, Plaintiffs claim they learned that Cosentino intended to deny that he was the individual who decided that Plaintiffs would not receive severance.

10

the need for McElyea's declaration *before* summary judgment; they knew of the need before discovery even closed.  They just waited to disclose McElyea.  And, in *Graley v. TZ Insurance Solutions*, No. 2:14-cv-636-FtM-CM, 2016 U.S. Dist. LEXIS 118893 (M.D. Fla. Sept. 2, 2016), the unpublished district court order Plaintiffs cite to, the plaintiff had previously disclosed the name of the declarant in responses to interrogatories nearly a year earlier.  Therefore, *Graley* is inapplicable to the extent the defendant knew of the witness for over a year.

Plaintiffs offer no other case that would persuade us to disrupt the broad discretion of the district court.  In any event, to the extent the district court's decision to strike McElyea could be considered error, it was harmless.  Nothing in his affidavit would have overcome ADSI's entitlement to summary judgment.  While he attested that he received a severance package from ADSI, it was after being offered a position that was ***not*** equivalent to his position at ADSI.  In other words, McElyea still would not have served as a comparator for Title VII purposes. Accordingly, the district court did not abuse its discretion in granting ADSI's motion to strike.

## B.    ADSI's Motion for Summary Judgment

We now turn to Plaintiffs' arguments concerning the grant of summary judgment in favor of ADSI.  We review *de novo* a district court's grant of summary judgment, using the same legal standards applied by the district court.  *Alvarez v.*

*Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). "We will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* at 1263–64.

### 1.    Sex-Discrimination Claim Under Title VII

Title VII prohibits intentional discrimination against an employee "because of," among other things, sex. 42 U.S.C. § 2000e-2(a)(1). A prima facie claim for sex discrimination under Title VII requires a plaintiff to show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) her employer treated similarly situated employees outside the protected class more favorably. *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The fourth prong is oftentimes referred to as a "comparator." *See id.* at 1217.

Where a plaintiff supports her Title VII claim with circumstantial evidence, we apply the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff bears the initial burden of presenting evidence sufficient to establish a prima facie case of discrimination. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174, 1181 (11th Cir. 2010). If she can establish a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.

12

*McDonnell Douglas*, 411 U.S. at 802.  The employer must clearly explain the reasons for its actions but need not persuade the court that it was actually motivated by its proffered reasons.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Finally, if the employer can articulate one or more legitimate, non-discriminatory reasons for its actions, the burden shifts back to the plaintiff to show that the reason offered by the employer was mere pretext.  *McDonnell Douglas Corp.*, 411 U.S. at 804.  To show pretext, a plaintiff must specifically respond to the employer's proffered reason and produce evidence directly rebutting that reason. *Crawford v. City of Fairburn*, 482 F.3d 1305, 1309 (11th Cir. 2007).  A plaintiff can show that an employer's reasons are pretext "by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [its] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004)).  If the proffered reason is one that would motivate a reasonable employer, a plaintiff cannot simply quarrel with the wisdom of the employer's decision. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  A proffered reason cannot "be 'a pretext for discrimination' unless it is shown both that the reason was

13

false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis omitted) (quoting *Burdine*, 450 U.S. at 258).

Here, the district court granted ADSI summary judgment, finding no genuine dispute that Plaintiffs could not make a prima facie case—specifically, their inability to identify a similarly-situated comparator whom ADSI treated more favorably. Plaintiffs argue this was error because they offered evidence of seven males to whom ADSI offered severance payment. We agree with the district court that these individuals were not "similarly situated" for Title VII purposes.

A comparator must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226. Stated otherwise, the plaintiff and comparators must be "sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)). While formal labels regarding job title are not necessary, a similarly situated comparator will ordinarily have engaged in the same basic conduct as the plaintiff and been subject to the same employment policy, guideline, or rule. *Id.* at 1227–28.

In finding the individuals that Plaintiffs identified were not proper comparators, the district court explained that a similarly-situated comparator would be a male who (1) was offered an equivalent position with AHI, (2) rejected the offer, and (3) then had been offered a severance package. The record evidence shows that Plaintiffs did not come forward with any evidence of anyone who met

14

this standard. And Plaintiffs did not present any evidence that ADSI applied the criteria used to determine severance any differently, inequitably, or discriminately to these male employees. Therefore, Plaintiffs did not show any male employee who received an *equivalent* job offer, rejected that offer, and was offered severance. Yet, on appeal, they contend they offered these seven males who were "subject to the same *layoff* as Plaintiffs." But the record evidence is clear Plaintiffs were never actually *laid off*; they rejected the employment offer from ADSI-to-AHI and completed their employment terms before leaving the company voluntarily. The district court thus properly determined Plaintiffs failed to make a prima facie case.

Alternatively, even if a plaintiff cannot establish a prima facie case of discrimination under the *McDonnell Douglas* framework, she can nevertheless survive summary judgment if she can "present[] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Under the *Smith* framework, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (footnote omitted) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011)). A plaintiff may establish a "convincing mosaic" by pointing to evidence that demonstrates (1) suspicious timing, ambiguous statements, or other information

15

from which discriminatory intent may be inferred, (2) systematically better treatment of similarly-situated employees, and (3) pretext. *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).

Plaintiffs argue that they showed a "convincing mosaic" by presenting the following circumstantial evidence: (1) ADSI applying an employment policy unequally to men and women so that all men received severance and women did not; (2) ADSI denying severance payment even when the women met the criteria to make them eligible; (3) ADSI engaging in inappropriate behavior toward women in the workplace, shown by one of the individuals involved in the discussions regarding layoffs and severance; and (4) ADSI lying about whether all of the affected women received severance. The problem with this argument is that it is mostly unsupported by the record evidence. For instance, Plaintiffs did not "meet the criteria to make them eligible for the severance payment." Again, Plaintiffs were offered positions to remain in Huntsville for twelve months; the requirement to receive severance payment was an *immediate* relocation. Further, there is no support in the record evidence that ADSI lied about whether women were paid severance.

We agree with ADSI's argument that Plaintiffs' so-called circumstantial evidence is largely based on their disagreement with ADSI's business judgment. This Court has rejected similar business-judgment quarrels in the past. *See Chapman*, 229 F.3d at 1030 ("[T]he employee cannot succeed by simply quarreling

16

with the wisdom of that reason."). ADSI makes the point that courts do not sit as "super-personnel departments," reexamining the wisdom of business decisions. Again, we agree. *See id.*

Because Plaintiffs failed to make a prima facie case and did not present a convincing mosaic of circumstantial evidence, ADSI was entitled to summary judgment on Plaintiffs' Title VII claim. Nevertheless, for the sake of completeness, we discuss the next step of the *McDonnell Douglas* framework, i.e., whether ADSI was able to articulate one or more legitimate, non-discriminatory reasons for its action.[4]

ADSI's proffered reason not to offer the Plaintiffs severance payment is because they had, indeed, been offered functionally equivalent positions at AHI. The record evidence supports this. Each of the three Plaintiffs was offered a position with AHI that was comparable in pay and position, and it allowed each to remain in Huntsville for at least twelve months. The discretion AHI retained to determine *whether* a relocation would take place after twelve months is something well within the realm of their business judgment. In any event, two of the three Plaintiffs

---

[4] We note that ADSI was not *required* to do so here because Plaintiffs were not able to establish a prima facie case under *McDonnell Douglas* or a convincing mosaic of circumstantial evidence. Thus, the burden never shifted to ADSI to offer this legitimate, non-discriminatory reason.

We also note, however, "the employer's burden is merely one of production; it 'need not persuade the court that it was actually motivated by the proffered reasons.'" *Chapman*, 229 F.3d at 1024 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

rejected the job offer and one rescinded her acceptance after speculating she would be required to relocate after one year. Not only did ADSI offer legitimate, objective criteria to determine who was, and who was not, entitled to severance payment, it proved there was no genuine dispute that Plaintiffs were never even entitled to the severance—they were offered employment with AHI and they voluntarily rejected it.

The district court properly entered summary judgment in favor of ADSI on Plaintiffs' Title VII claim. Accordingly, we affirm.

### 2.    Breach-of-Contract Claim

Next, we turn our attention to Plaintiffs' claim for breach of contract. The party attempting to establish a breach-of-contract claim bears the burden of proving the existence of a valid, enforceable contract. *Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1203 (Ala. 2008). Under Alabama law, a valid, enforceable contract requires the following irreducible elements: "an offer, an acceptance, consideration, and mutual assent to terms essential to the contract." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (quoting *Steiger v. Huntsville City Bd. of Educ.*, 653 So. 2d 975, 978 (Ala. 1995)).

Plaintiffs argue that Cosentino's and Findlay's job-or-severance oral promises to ADSI employees pre-transitioning to AHI constituted a contract—and not just a contract, but one separate and apart from their status as at-will employees. This

simply misconstrues the basic formation of a contract.    At most, the oral representations by Cosentino and Findlay would have constituted offers to form a contract, which Plaintiffs could have either accepted or rejected.    However, we find there was neither an offer nor an acceptance in this case.    And, because there was no offer or acceptance, as well as the alleged contracts having lacked the necessary essential terms, there was never a valid, enforceable contract.    While the district court did not address this, we find it both necessary and relevant to do so.

Offers and acceptance are assessed by looking at "the reasonable meaning of the parties' external and objective manifestations of mutual assent, rather than by their uncommunicated beliefs." *See Mayo v. Andress*, 373 So. 2d 620, 623–24 (Ala. 1979).    The oral representations made by Cosentino and Findlay initially may have appeared to constitute an offer.    However, the record evidence shows that, after these oral representations by Cosentino and Findlay, Plaintiffs were presented with an offer letter.    That letter unambiguously stated: "*The company is not offering you employment for any definite period of time*."  (emphasis added).    This language tends to defeat any objective belief that the letters actually constituted an offer, at least as a matter of law.    Even assuming, for summary-judgment purposes, this was an offer—the language simply limiting the terms of employment—ADSI proved there was no genuine dispute that Plaintiffs expressly rejected this offer.    The undisputed evidence showed Johnson and Stoddard each declined the AHI positions under the

19

belief they ultimately would be required to relocate from Huntsville. Ranes, on the other hand, rescinded her acceptance after being told she would be required to relocate from Huntsville after her twelve months with AHI. It is elementary that there is no valid contract when the party to whom the offer is made does not accept the offer. *See Mantiply*, 951 So. 2d at 656. Without "a valid contract binding the parties," it is axiomatic that a plaintiff cannot succeed on a breach-of-contract claim. *See Avis Rent a Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1118 (Ala. 2003).

The alleged contract also lacked the necessary essential terms with the requisite definiteness to be considered a valid, enforceable contract. *See Mantiply*, 951 So. 2d at 656; *Drummond Co. v. Walter Indus., Inc.*, 962 So. 2d 753, 774 (Ala. 2006) ("[I]f a court cannot discern the intentions of the parties to a contract because the contract is so vague and indefinite, the contract is void on the ground of uncertainty."). The offer letters never discussed or contained the terms of employment, much less the terms for entitlement to severance payments. Indeed, the offer letter stated: "The company is not offering you employment for any definite period of time. *All terms and conditions are subject to change without notice at the Company's discretion*." (emphasis added). This language renders the alleged contract nothing more than illusory in nature, lacking any definiteness necessary to bind the parties to such a legal agreement. *See Childersburg Bancorporation, Inc. v. People State Bank of Com.*, 962 So. 2d 248, 260 (Ala. Ct. Civ. App. 2006)

20

(reasoning that a party to an alleged contract cannot "unilaterally control the conditions" of the contract). Simply, the language is too vague and leaves too much open-ended for the formation of a contract.

Plaintiffs continuously reference back to Cosentino's and Findlay's oral representations. They cite to *Evans v. National Microsystems, Inc.*, 576 So. 2d 207, 208 (Ala. 1991), which they contend has "remarkably similar" facts. We find *Evans* distinguishable for several reasons. In *Evans*, the company circulated a written memorandum to its employees, informing them of their right to a severance payment if they resigned before a date certain. *Id.* at 208. In response, the plaintiff resigned. *Id.* at 209. The Alabama Supreme Court found that the act of resigning constituted the plaintiff's acceptance of the company's offer, thereby forming a valid contract. *Id.* at 209–10 ("Under the fact situation presented in this case, the employee showed his acceptance of the offer made to him by tendering his letter of resignation. His performance—the tendering of his resignation—eliminated his right to any unemployment benefits he might collect and was sufficient consideration for Microsystems' promise of severance pay.").

Without phrasing it as such, *Evans* is a classic case of the formation of a unilateral contract. In these situations, the offeree manifests her acceptance of the offer simply by rendering performance on the contract. *See also SouthTrust Bank v. Williams*, 775 So. 2d 184, 188 (Ala. 2000) ("[A] unilateral contract results from an

21

exchange of a promise for an act . . . ." (alteration in original) (quoting Mark Pettit, Jr., *Modern Unilateral Contracts*, 63 B.U.L. Rev. 551, 553 (1983))); *Miller v. Thompson*, 156 So. 773 (Ala. 1934) ("[P]erformance supplies the element of mutuality necessary as a consideration to support the obligation."). Thus, again, in *Evans*, the plaintiff accepted the company's offer, thereby forming a contract, upon resigning from his position. No return promise, or other representation, was necessary.

Conversely, "a bilateral contract results from an exchange of promises." *SouthTrust Bank*, 775 So. 2d at 188 (quoting *Pettit*, *supra*, at 553). Here, the nature of the alleged offer from Cosentino and Findlay did not lend itself to Plaintiffs' ability simply to perform as a manner in accepting. Rather, they were required to *return a promise* to accept the alleged offer. They did not do so; to the contrary, they expressly rejected the offer. No bilateral contract was formed. While the *content* of the offer in *Evans* may be comparable, the *nature* of the offer is distinguishable.

Plaintiffs also point to *Reynolds Metal Co. v. Hill*, 825 So. 2d 100 (Ala. 2002), in which a supervisor allegedly represented to a group of employees that, if their plant were sold or closed, they would be entitled to certain benefits. *Id.* at 102–03. The plaintiffs filed a class action after they and the company could not come to an agreement on the implications of the supervisor's representations. *Id.* While the

22

facts of *Reynolds*, like those of *Evans*, are somewhat similar to this case, the procedural posture is not—and that is of great legal significance. On reviewing the trial court's class certification, the Alabama Supreme Court was not determining whether a valid, enforceable contract existed. *See id.* at 108. Nevertheless, *Reynolds* is entirely irrelevant because the facts of this case leave no dispute that the Plaintiffs never entered into a contract with AHI for employment.

Plaintiffs never entered into a valid, enforceable bilateral contact with ADSI that was separate and apart from their at-will employment. There is no dispute from the record evidence that there was no offer, no acceptance, and no essential terms with definiteness to form a contract. The district court properly entered summary judgment in favor of ADSI on Plaintiffs' breach-of-contract claim.

## III.   CONCLUSION

For the reasons stated above, we affirm the district court's order granting summary judgment in favor of ADSI and granting ADSI's motion to strike.

**AFFIRMED.**

23